**William G. THELEN, Marlene Koeppel, Lisa Abrams, and Gabrielle Koeppel, individually and on behalf of all others similarly situated**

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY.**

Civil Action No. DKC 99–18.

United States District Court, D. Maryland.

March 30, 2000.

Marc I. Gross, Pomerantz Haudek Block Grossman & Gross LLP, New York City, Seth D. Goldberg, Seth Goldberg, PC, Washington, DC, Martin H. Schreiber, II, Brown, Goldstein & Levy, Baltimore, MD, for Plaintiffs.

Nell B. Strachan, Dino S. Sangiamo, Venable, Baetjer and Howard, LLP, Baltimore, MD, for Defendant.

### MEMORANDUM OPINION

CHASANOW, District Judge.

Pending and ready for resolution is a Motion to Dismiss filed by Defendant, Massachusetts Mutual Life Insurance Company (MassMutual).[1] The issues are fully briefed, and no hearing is deemed

---

1. By agreement of the parties, consideration if the motion to certify class has been de- ferred.

necessary. Local Rule 105.6. For the reasons that follow, the motion will be GRANTED.

*Background*

Plaintiffs are William G. Thelen, Marlene Koeppel, Lisa Abrams, and Gabrielle Koeppel. They seek to bring a class action, asserting four causes of action, arising from the purchase from Defendant of various life insurance policies from January 1, 1985 to the present. The amended complaint alleges that MassMutual deceptively marketed policies with "vanishing premiums" by the use of false and misleading illustrations, purporting to show how interest and dividends would be sufficient after a set number of years to cover the premiums.

According to the amended complaint, Mr. Thelen purchased from MassMutual a $100,000 Convertible Whole Life N–Pay policy in 1985.[2] The policy issued on September 20, 1985. Based on alleged representations and written illustrations provided by a MassMutual agent, he contends that he contracted to pay only $1,367 for eight years, or until 1992. He further alleges that, when inquiries were made on his behalf in 1993 and thereafter, he was falsely reassured that premiums would "vanish" soon. It was not until August 22, 1997, he claims, that he learned that premiums would be due for considerably longer.[3]

Marlene Koeppel, the mother of Lisa Abrams and Gabrielle Koeppel, purchased from MassMutual, on behalf of her daughters, a whole life policy in January 1990 with a face amount of $250,000. She alleges that she was assured that the premiums on her policy were guaranteed to cease after nine years. The Koeppel plaintiffs assert that they "unexpectedly" have been informed that out of pocket premiums will not vanish as originally illustrated and represented.

The Amended Complaint contains four counts. In Count One, brought under the Massachusetts Consumer Protection Statute, Plaintiffs allege unfair methods of competition and unfair and deceptive practices in the conduct of a business. This claim arises from the illustrations provided in conjunction with the sale of the policies. Count Two, for Negligent Misrepresentation, asserts that MassMutual falsely stated that:

> the single prepayment of premiums at the time of purchase of the policy, or the payment of premiums during the initial years of the policies, would be sufficient to fund the policies for the life of the insureds without reducing the death benefit.

At the time of these statements, MassMutual allegedly failed to disclose that dividend rates would be reduced and that the number of cash premium payments would increase, and allegedly made a variety of other misrepresentations. It is alleged that defendant made these misrepresentations and failed to make disclosures with negligent disregard for the fact that it planned gradually to reduce its dividend rates over several years. Count Three alleges Common Law Fraud based on similar alleged misrepresentations, with knowledge that they were incomplete and/or misleading. Finally, Count Four

---

**2.** Neither the policies nor the illustrations are attached to the amended complaint. The policies are attached to Defendant's motion to dismiss, as are the illustrations. Because the complaint refers to these documents, they may be considered on the motion to dismiss without converting it to a summary judgment motion. Fed.R.Civ.P. 12(b).

**3.** The policy stated that premiums were due for his lifetime. The illustrations did include the following:

> Dividends are used to buy paid-up additions for 8 years. Thereafter, premiums are paid from dividends and paid-up additions, if necessary.

The illustration also stated, however, "Dividends are based on current dividend schedule, which is not guaranteed" and "Changes in current experience can subject dividends to significant fluctuations."

asserts Breach of Contract, contending that MassMutual entered into contracts with Plaintiffs, promising that the stated number of annual cash premium payments would fully fund the policy, that MassMutual breached that promise, as well as the obligation of good faith and fair dealing due to the deceptive practices.

Defendant's motion to dismiss raises several issues: statute of limitations, failure to state any fraud-based claim or lack of particularity, inability to seek economic damages under the economic loss doctrine, failure to state a contract claim based on oral representations that preceded a written agreement, and inapplicability of Massachusetts law. For the reasons that follow, it will only be necessary to address the statute if limitations issue.

*Standard of Review*

A motion to dismiss pursuant to FED. R.CIV.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When ruling on a motion to dismiss, the court must consider well pled allegations in a complaint as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Allegations are to be construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Courts need not, however, assume the truth of legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–755 (9th Cir.1994) (citing *Papasan* and noting that the court is not required to accept conclusions that doubt reasonably be drawn from the facts alleged).

The purpose of FED.R.CIV.P. 12(b)(6) is to "streamline litigation by dispensing with needless discovery and fact finding."

*Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The Federal Rules do not generally require that a complaint describe alleged wrongdoing with any particularity. FED. R.CIV.P. 8(a)(2); *Comet Enterprises Ltd. v. Air–A–Plane Corp.*, 128 F.3d 855, 860 (4th Cir.1997). Allegations of fraud, however, are to be set forth with particularity, concerning "the circumstances constituting fraud." FED.R.CIV.P. 9(b). However, even as to other allegations, "if a plaintiff chooses to 'plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court.' " *Jefferson v. Ambroz*, 90 F.3d 1291, 1296 (7th Cir.1996) (quoting *Thomas v. Farley*, 31 F.3d 557, 558–559 (7th Cir.1994)); *see also Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir.1995) ("More is not necessarily better under the Federal Rules; a party 'can plead himself out of court by unnecessarily alleging facts which ... demonstrate that he has no legal claim.' ") (quoting *Trevino v. Union Pac. R.R.*, 916 F.2d 1230, 1234 (7th Cir.1990)).

*Statute of Limitations*

MassMutual argues that those claims are barred by the applicable three year statute of limitations. While Plaintiffs do not dispute the applicability of a three year statute of limitations for each of the claims,[4] the parties disagree on (a) when each claim accrued for limitations purposes, (b) whether any conduct by MassMutual tolled the limitations periods, and (c) whether the pendency of other class action complaints tolled the limitations period.

Plaintiffs argue that their claims are timely. Ms. Koeppel contends that her breach of contract claim did not accrue until 1999 when she was informed that she would have to pay premiums beyond the date represented in her illustration. It was not until then, she argues, that a breach occurred. She argues that the tort claims, based on MassMutual's failure to

---

**4.** Plaintiffs appear to agree that Maryland law   governs the statute of limitations issues.

advise her of a plan to reduce its inflated dividend rates, did not accrue until she was put on inquiry notice by learning that her out of pocket premiums would not "vanish" as illustrated. Mr. Thelen, who acquired his policy in 1985, was first informed in May 1993 that he would have to pay additional premiums. He argues that, even if that event triggered the limitations period, it was tolled by the filing of two nationwide class actions within the ensuing three years. Furthermore, he argues that misconduct of MassMutual agents in 1993 constituted fraudulent concealment and also tolled the limitations period. Both plaintiffs contend that they only learned of the basis for their cause of action in January 1999 with the publication of the decision of Judge Walter J. Relihan, Jr. in *Russo v. Massachusetts Mut. Life Ins. Co.*, No. 96–368 (January 6, 1999), which outlined some of the fruits of discovery conducted in that case.

MassMutual counters that the limitations periods began when each plaintiff received the policy, that out of state class action complaints do not toll their claims, either as individuals or on behalf of a class, and that no assurances in 1993 can constitute grounds for tolling.

■ Under Maryland law, a plaintiff must bring a claim within three years of its accrual, unless the claim could not, despite due diligence, have been discovered, or unless there is a basis for tolling the statute of limitations. Specifically, MD CODE ANN., CTS. & JUD. PROC. § 5–101 (1998) provides:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

Historically, a claim generally accrued when the wrong was committed, not when it was discovered. Now, however, under Maryland law it is generally said that the claim will not accrue until a plaintiff knows or reasonably should know of the wrong.

*Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677, 680 (1981).

### Accrual of Fraud and Misrepresentation Claims

■ The alleged misrepresentations underlying Counts One, Two, and Three preceded the purchase of the policies. Each of these claims requires proof of a misrepresentation, intentionally or negligently made, reasonably relied on by Plaintiff, that is false or misleading, resulting in damages. The only issue in this case is when each plaintiff knew, or reasonably should have known, of the claim. Plaintiffs argue that the misrepresentations themselves prevented them from knowing of their claims until late in the 1990's, when other similar lawsuits were brought and information came to light concerning MassMutual's internal documents. Similar arguments were considered and rejected in *In re Northwestern Mut. Life Ins. Co. Sales Practices Litig.*, 70 F.Supp.2d 466 (D.N.J.1999). The *Sales* case was multi-district litigation involving similar claims arising under the law of Illinois, New Jersey, and Alabama. All three states, like Maryland, follow an objective standard for when a plaintiff, by the exercise of reasonable care, should have known of the injury and the wrong. The *Sales* plaintiffs were found to have been put on notice by the policies themselves which contradicted or failed to incorporate the alleged representations of vanishing premiums upon which the plaintiffs relied.

By reference to several decisions in other states that claims were not ripe until the expiration of the number of years of anticipated premiums had passed, Plaintiffs suggest that their claims could not have been pursued earlier. In these cases, the defendant apparently had moved to dismiss the claims in the basis that injury or damage might not happen if, for instance, the insured died prior to that future date, or the interest rates in fact stayed sufficiently high so that the premiums would "vanish" as originally promised.

See *Frith v. Guardian Life Ins. Co.*, 9 F.Supp.2d 734, 738 (S.D.Tex.1998); *Underwood v. Life Ins. Co.*, 14 F.Supp.2d 1266, 1271–72 (N.D.Ala.1998). Defendant distinguishes those cases by arguing that Maryland law is to the contrary.

Maryland law, of course, recognizes that a claim must be ripe in order to be justiciable. Ripeness is the requirement that a claim be definite and matured, not contingent or speculative. *See, e.g., Hickory Point Partnership v. Anne Arundel County*, 316 Md. 118, 557 A.2d 626, 632 (1989). There is no question that whatever damages occurred to Plaintiffs due to the fraud based claims were real as of. the date the insurance contracts were issued. Each of the claims includes the element of reliance by Plaintiff to his or her detriment. The only reliance was in entering into the contract. Presumably Plaintiffs are stating that they would not have purchased the policies if they had not been mislead by MassMutual. To claim now that no damages occurred until years later seeks to reward their own delay. Had they sued for fraud immediately, they might have in effect mitigated the damages.

*Accrual of Contract Claim*

■ Count Four alleges that each contract promised that a stated number of years of payments would fund the policy, and that each implied a covenant of good faith and fair dealing. The breach allegedly occurred when the above noted deceptive sales practices were perpetrated and when MassMutual demanded that each plaintiff pay additional out of pocket premiums or risk cancellation of the policies. That is, Plaintiffs claim that the breach of contract did not occur until the anticipated period of premium payment expired and the policyholder was notified that each premiums were still due. For Mr. Thelen that would have occurred in 1993 and he must rely on the equitable tolling doctrine due to the pendency of other class action suits. For Mr. Keoppel, that did not occur until 1999.

The alleged contract based on written illustrations and oral representations, however, was breaches, if at all, when the written policy failed to incorporate the alleged promises made. As stated in *In re Northwestern Mut.*, 70 F.Supp.2d at 495:

[Plaintiff] urges that the breach occurred when he was advised by NMW in 1996 that he would be required to make payments beyond the period originally represented. This position is untenable. There is no dispute that [the agent's] promises and representations were made before [plaintiff] purchased the three life policies and that the policies (which did not conform to the alleged promises and representations) were delivered in 1987 and 1988. That was when the breach occurred. Suit was not commenced until August 1997, well beyond the six year bar date for contract claims.

Here, as well, the alleged oral premises were made prior to the issuance of the written policies that clearly state that premiums are due for the life of the insured. Damages also were real at that time, and not completely contingent, so as to be unripe at that time. The alleged contract, consisting of oral representations and the written illustrations, if not breached when the insurance policy was delivered, would certainly have been breached as soon as the dividend was lower, resulting in lower paid up additions, which each plaintiff asserts happened almost immediately .after the purchase. One does not have to wait the entire time before damages occurs. Maryland also recognizes the anticipatory breach doctrine, at least for bilateral contracts. *String v. Steven Development Corp.*, 269 Md. 569, 307 A.2d 713, 718 (1973). Here, in effect, Plaintiffs allege that MassMutual, by changing the promised rates, indicated that it would breach the agreements by requiring premiums for a longer period of time. Because Plaintiffs still had to pay the annual premiums, the contracts had not become unilateral, and Plaintiffs could have sued in Maryland at that time for breach of contract.

*Tolling*

Mr. Thelen claims that the assurances of the agents in 1993 constitute fraudulent concealment sufficient to toll the statute. It must be remembered that fraudulent concealment does not start a limitations period anew, but might suspend its running for a period of time until the duty to inquire further again applies. Maryland recognizes a fraudulent concealment doctrine, that is now codified by Md.Code Ann., Cts. & Jur. Proc. § 5–203 (1998). It has two conditions: the party asserting the doctrine was kept in ignorance of his cause of action by the fraud of the adverse party and the party has nevertheless exercised usual or ordinary diligence to discover his rights. *See Edwards v. Demedis,* 118 Md. App. 541, 703 A.2d 240, 251 (1997). Thus, due diligence is an inquiry of critical importance in this case as to both the accrual of Plaintiffs' causes of action and the validity of their claim of fraudulent concealment.

A vague "assurance" that the premiums would vanish "soon" is hardly sufficient to allege or constitute the kind of fraud necessary to toll the statute of limitations on the basis of fraudulent concealment. If, as posited by Mr. Thelen, he was not even on inquiry notice until the premiums continued to be collected in 1992, he surely would have been within a brief period of time, despite these assurances. This suit was not filed until 1999.

▌ Mr. Thelen further claims, as does Ms. Koeppel, that the pendency of other class actions also tolled the running of the statute of limitations.[5] As held in *Wade v. Danek Medical, Inc.,* 182 F.3d 281, 289 (4th Cir.1999), when a state stat-ute of limitations applies in a diversity case, so too does the state rule regarding equitable tolling. Accordingly, it is not enough merely to cite to *American Pipe & Const. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), a case applying a class action tolling rule to a federal statute of limitations. Rather, Plaintiffs must establish that Maryland would apply that doctrine to the facts of this case. Plaintiffs suggest that this type of tolling "is consistent with Maryland State law." citing to *Furst v. Isom,* 85 Md.App. 407, 584 A.2d 108 (1991). That case, however, dealt with a very different problem. Plaintiffs had filed the identical claim, but it was dismissed. When they tried to file a second claim, they were faced with the statute of limitations problem. There, it was deemed unfair to require a plaintiff to file a protective second suit while the first was pending. The court expressly did not adopt any theory of "equitable tolling," *Id.* at 112.[6] In making the appropriate analysis with respect to Virginia, the Fourth Circuit concluded that, inasmuch as very few states had adopted "cross-jurisdictional" equitable tolling and there are strong policy arguments against adopting it, Virginia would not adopt a rule of class action tolling. 182 F.3d at 287. In Maryland, also, there is no case directly addressing the issue, but what precedents there are, augur against its adoption. *See, e.g., Hecht v. Resolution Trust Corp.,* 333 Md. 324, 635 A.2d 394, 399 (1994). Indeed, the existence of Rule 2–101(b), which provides a limited savings window if an identical action is dismissed by another court, clearly indicates the absence, under Maryland law, of the broad, cross-jurisdictional class

---

5. The other actions were *Cunningham v. Massachusetts Mut. Life Ins. Co.,* No. 95–417 (N.D.Miss.) (filed December 1995) and *Russo v. Massachusetts Mut. Life Ins. Co.,* No. 96–368 (N.Y.Sup.Ct.) (filed April 1996).

6. The next year, Rule 2–101(b) was adopted: Except as otherwise provided by statute, if an action is filed in a United States District Court or a court of another state within the period of limitations prescribed by Mary-land law and the foreign court enters an order of dismissal for lack of jurisdiction, because the court declines to exercise jurisdiction, or because the action is barred by the statute of limitations required to be applied by that court, an action filed in this State within 30 days after the foreign court's order of dismissal shall be treated as timely filed in this State.

action equitable tolling advocated by plaintiffs.

*Conclusion*

In sum, Plaintiffs were in possession of sufficient information at the time the insurance policies were issued to have discovered all of the alleged claims. Nothing that happened thereafter served to toll the running of the period of limitations. By waiting many years to assert these claims, despite that knowledge, they sat on their rights and the applicable statutes of limitations had run by the time the complaint, for Mr. Thelen, and the amended complaint, for the Koeppel plaintiffs, were filed. Accordingly, the motion to dismiss will be granted. A separate Order will be entered.