[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11756
Non-Argument Calendar

_____

D.C. Docket No. 9:18-cv-80558-DMM

GARY H. LEBBIN,

Plaintiff,

THE LEBBIN-SPECTOR FAMILY TRUST BY AND
THROUGH ITS TRUSTEES ROGER M. LEBBIN
AND CAROLE SUE LEBBIN,

Plaintiff - Appellee,

versus

TRANSAMERICA LIFE INSURANCE COMPANY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 2, 2021)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Transamerica Life Insurance Company appeals the district court's order granting summary judgment in favor of the Lebbin-Spector Family Trust (the "Trust") and awarding the Trust $2.53 million in damages. According to Transamerica, the life insurance policies at issue terminated in 2017, and it is not required to pay out any death benefits. According to the Trust and the district court, the terms of the life insurance policies are ambiguous and must be construed against Transamerica. After careful review, we reverse the district court's order granting summary judgment in favor of the Trust on the breach of contract claim and remand to the district court for grant of summary judgment in favor of Transamerica on that claim. Having concluded there was no breach of contract, we also vacate the court's order awarding the Trust damages.

## I.

This case involves two "second-to-die" life insurance policies that jointly insured Gary Lebbin and his wife, Bernice, and had a combined coverage amount of $3.2 million. These types of policies insure the lives of two people and pay a death benefit upon the death of the second insured to die.

In 1990, Gary purchased a $2 million policy (the "1990 Policy"). Gary and Bernice, the Joint Insureds, both turned 73 that year. The owner and beneficiary

was the Trust, with Gary's children, Roger and Carole Sue Lebbin, as trustees. Gary purchased another policy the following year in the amount of $1.2 million (the "1991 Policy"). The Trust was again the owner and beneficiary. Both Policies had identical payout provisions. Transamerica agreed to

> pay the death benefit to the Beneficiary if both Joint Insureds die before the policy anniversary nearest Joint Equal Age 100. . . . If both or either Joint Insured is living at the policy anniversary nearest Joint Equal Age 100, we will pay the net cash value, if any, to you.

The Policies defined "Joint Equal Age" as "the adjusted age of the Joint Insureds which reflects a risk that would be equivalent to two people of the same age, class of risk and smoking status." When the 1990 Policy was issued, it listed the Joint Equal Age as 73, and when the 1991 Policy was issued, it listed the Joint Equal Age as 74. The Policies also contained identical termination provisions. "The policy will terminate at the earliest of," in relevant part, "the policy anniversary nearest Joint Equal Age 100."

Over almost three decades, the Trust paid Transamerica more than $1.5 million in Policy premiums. In 2015, Bernice passed away at the age of 97.

At some point, the trustees learned the 1990 Policy and the 1991 Policy would terminate on July 9, 2017, and December 20, 2017, respectively, unless Gary passed before then. Transamerica stated that when the Policies terminated on those dates, it would pay only the accumulated cash value in the Policies to the

3

Trust.  Because Gary lived past the respective termination dates—he turned 100 on September 6, 2017 and is now almost 103—the Policies terminated.  Transamerica issued checks to the Trust for $2,574.47 and $55.18, the net cash values of each Policy.[1]

In July 2017, the Trust, through Roger and Carol Sue as trustees (the "Plaintiffs"), sued Transamerica in the District of Maryland.[2]  The Plaintiffs alleged that Transamerica marked the Policies "as permanent coverage that would insure the Lebbins for life" and guarantee the Trust would receive death benefits. The complaint alleged, in relevant part, that Transamerica breached the Policies by terminating them in 2017.

As relevant to this appeal, both sides filed cross-motions for summary judgment.  The Plaintiffs sought summary judgment on their breach of contract claim, while Transamerica sought summary judgment in its favor on all of the Plaintiffs' claims.  Transamerica made several arguments, including that the Plaintiffs' claims were barred by the applicable statute of limitations and that the terms of the Policies clearly indicated their termination dates.

The district court granted summary judgment in favor of the Plaintiffs.  With respect to the statute of limitations argument, the court first found (and the parties

---

[1] These amounts were calculated according to the Policies.

[2] The case was later transferred to the Southern District of Florida.

4

do not dispute on appeal) that the three-year statute of limitations under Maryland law applies to this case.[3] Md. Code Ann., Cts. & Jud. Proc. § 5-101. The court also found that Maryland has adopted the discovery rule, which provides that a cause of action accrues "when a plaintiff in fact knows or reasonably should know of the wrong." Hecht v. Resol. Tr. Corp., 635 A.2d 394, 399 (Md. 1994).

The district court rejected what it described as Transamerica's "principal theory" concerning notice. Transamerica argued the cause of action accrued when Gary first received the Policies and the plain language of the Policies "did not include any reference to the 'permanent insurance' he was allegedly promised and which contradicted any promise that coverage would never terminate." The court said that if Gary understood the terms of the Policies to be consistent with the statements on which he relied when he purchased the Policies, "it would be unjust and unreasonable to hold the Trust accountable, at this time, for a disjunction that Gary did not perceive."

Transamerica's other theory was based on actual knowledge. It argued the Plaintiffs had actual knowledge of the Policies' termination dates based on Roger Lebbin's realization that the Policies would terminate when his parents reached age 100. Roger testified that the servicing agent for the Policies told him the Policies

---

[3] Because this case was initiated in Maryland but was transferred to Florida, the parties agree Maryland procedural law and Florida substantive law apply.

would terminate if Gary reached age 100.  He expounded: "I think that was my day of reckoning. . . . I thought that the policy was a guarantee, an absolute certainty that it pays when the second to die passes away."  Roger was then shown a June 10, 2014, email confirming his understanding as of that date that if one of his parents lived past 100, he would receive the cash value of the Policies rather than the multi-million-dollar death benefit.  He went on to say: "This is what I referred to as my 'aha' moment. . . .  It was a 'Houston, we have a problem' moment" because this would "defeat the whole purpose of the policy."  Based on these facts, Transamerica argued the Plaintiffs had actual knowledge of the cause of action on June 10, 2014.

The district court also rejected this theory.  It reasoned that "<u>when</u> the Policies were breached in this action necessarily depends on <u>whether</u> they were breached."

The court then proceeded to analyze the terms of the Policies, finding that because the term "adjusted" in the definition of Joint Equal Age was not defined, the definition of Joint Equal Age was ambiguous.[4]  Based on this ambiguity, the court adopted the Plaintiffs' "reasonable" proffered interpretation—that the term

---

[4] The Plaintiffs' theory was that because the term "adjusted" within the definition of Joint Equal Age was not defined, it was impossible to determine when or how the Joint Equal Age was adjusted or increased, and therefore impossible to know when an insured has reached the Joint Equal Age.

6

"adjusted" required Transamerica to independently perform an adjustment to Gary's and Bernice's ages and notify the Plaintiffs of the effect of that adjustment. And, because Transamerica did not do any such adjusting to Gary and Bernice's Joint Equal Age, the district court found Transamerica breached the Policies.[5]

The district court then issued an order determining the damages to which Plaintiffs were entitled. The court rejected the Plaintiffs' theory of damages. Instead, it adopted Transamerica's theory, which proposed awarding the Trust the amount of the Policies less the amount of premiums—monthly mortality and expense charges—that would be required to keep the Policies active during Gary's remaining life expectancy. It then sua sponte calculated damages by using an "average yearly increase" methodology that estimated premiums and used Gary's estimated remaining lifespan, which assumed a shorter lifespan than Gary actually came to have. However, because no party had advanced this calculation and Gary's actual lifespan exceeded the estimate of his life expectancy, the court allowed additional briefing on the issue. Ultimately, the district court awarded the Plaintiffs $2,530,154 in damages.

Transamerica appealed from the final judgment and final order on damages. It makes several arguments in this appeal, including that the district court erred (1) by finding that the Plaintiffs' claims were not barred by the statute of

---

[5] Based on this breach, the district court also found that Plaintiffs' claim was timely.

7

limitations; (2) in interpreting the term Joint Equal Age in the Policies; (3) by declining to consider extrinsic evidence to resolve any alleged ambiguity in the Policies; and (4) by awarding the Trust over $2.5 million in breach of contract damages.  We conclude the District Court did not err in finding the claims were not barred by the statute of limitations, but it erred in finding the term Joint Equal Age ambiguous.

## II.

We review de novo the district court's grant of summary judgment to the Trust, including its application of the statute of limitations and its interpretation of a contract.  M.H.D. v. Westminster Schools, 172 F.3d 797, 802 n.13 (11th Cir. 1999); Hegel v. First Liberty Ins. Corp., 778 F.3d 1214, 1219 (11th Cir. 2015).  We apply the same legal standards applied by the district court in the first instance. Yarbrough v. Decatur Hous. Auth., 941 F.3d 1022, 1026 (11th Cir. 2019). Summary judgment should be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## III.

### A. PLAINTIFFS' BREACH OF CONTRACT CLAIM IS NOT TIME-BARRED

First we address whether the district court erred by finding the statute of limitations did not bar the Trust's claims.  Transamerica says the Plaintiffs' breach of contract claim "is based on an insurer's failure to issue the promised coverage,"

8

which accrues upon issuance of the non-conforming policy, subject to the discovery rule. It argues that the termination provisions in the Policies put the Plaintiffs on notice and, regardless, the trustees had actual knowledge no later than June 10, 2014, when Roger was told about the termination dates by the Policies' servicing agent. The Plaintiffs counter this argument and say that Maryland's discovery rule cannot work to accelerate the accrual of a cause of action. And, because their claim is based on Transamerica's alleged breach of the Policies' termination provisions, the Plaintiffs say the clock did not start until Transamerica terminated the Policies.

We find no support for Transamerica's argument in Maryland law. The general rule is that a cause of action for breach of contract accrues upon the breach. Kumar v. Dhanda, 43 A.3d 1029, 1035 (Md. 2012). We find no precedent holding that in a case alleging a breach of contract based on contract provisions, a plaintiff's notice of the offending provision can put the date of the accrual before the date of the breach. See id. at 1034 ("[T]he law is concerned with accrual in the sense of testing whether all of the elements of a cause of action have occurred so that it is complete." (quotation marks omitted)).[6] This means the statute of

---

[6] Transamerica's reliance on Thelen v. Massachusetts Mutual Life Insurance Company, 111 F. Supp. 2d 688 (D. Md. 2000), and Ruddy v. Equitable Life Assurance Society of U.S., No. CIV. A. DKC 00-70, 2000 WL 964770 (D. Md. June 20, 2000), is inapposite. Those cases addressed claims based on oral representations that the insured relied on to purchase the policies and which allegedly contradicted the plain terms of the policies. See Thelen, 111 F. Supp. 2d at 690, 693 (relying on agent's representation that monthly payments above a certain amount would

limitations could not have begun to run before Transamerica "was called upon to perform its obligations under the contract." See Millstone v. St. Paul Travelers, 962 A.2d 432, 437 (Md. Ct. Spec. App. 2008), aff'd, 987 A.2d 116 (Md. 2010). Because the obligations in this case are alleged to be continued coverage, the Plaintiffs' breach of contract claim is tied to the dates of termination, which were July 9, 2017, and December 20, 2017, respectively. The Plaintiffs filed their complaint in July 2017, within the statute of limitations.

## B. THE DISTRICT COURT ERRED IN FINDING THE POLICIES AMBIGUOUS

Next we turn to the district court's finding that Transamerica breached the Policies by terminating them. The court adopted two arguments raised by the Plaintiffs, first finding that the word "adjusted" in the definition of Joint Equal Age, was "not sufficient to explain itself on its own," which rendered the definition of Joint Equal Age "deficient." Based on this ambiguity, the court construed the Policies against Transamerica and in favor of coverage.

On appeal, Transamerica argues the district court's findings were wrong for three reasons. First, it says the court erred by finding the definition of Joint Equal

---

guarantee the premium would vanish and holding the breach occurred, if at all, when the written policy failed to incorporate the alleged promises made); Ruddy, 2000 WL 964770, at *1, *4–5 (holding there was a single, not a continuing, breach based on the written policy's failure to incorporate oral promises). Here, the Plaintiffs' breach of contract claim is based solely on their reading of the Policies.

Age was "incomprehensible." Second, it argues the Policies need to be construed as a whole, but the district court erred by focusing on a single term. Finally, Transamerica says the court's adoption of the Plaintiffs' interpretation required rewriting the Policies, which is unreasonable as a matter of law. We conclude that the Policies are not ambiguous.

As mentioned, Florida substantive law governs the interpretation of the Policies. See Hegel, 778 F.3d at 1220. Florida law provides that we begin by looking at the language of the policy as a whole, endeavoring to give every provision its full meaning and operative effect. See Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). "Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." Washington Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013). In other words, we must avoid relying on certain provisions to the exclusion of others. Id.

Our Court does, however, consider policy language to be ambiguous under Florida law "if the language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." Id. (quotation marks omitted). But to allow for such a construction, "the provision must actually be ambiguous." Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007) (emphasis added). A provision is not ambiguous "simply because it is

11

complex or requires analysis." Id.  If we determine a policy is ambiguous, we will resolve the ambiguity in favor of the insured by adopting the reasonable interpretation of the policy's language that provides coverage, as opposed to the reasonable interpretation that would limit coverage.  Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 785–86 (Fla. 2004).  Therefore, when one reasonable interpretation of an ambiguous policy provision would provide coverage, "that is the construction which must be adopted."  Ruderman, 117 So. 3d at 950.

As referenced above, the Policies say that if either Gary or Bernice (or both) were living "on the policy anniversary nearest Joint Equal Age 100," Transamerica would pay only the net cash value, not death benefits, to the Trust.  The termination dates also coincided with this date, noting that the Policies would terminate, in relevant part, at "the policy anniversary nearest Joint Equal Age 100." Joint Equal Age is defined as "the adjusted age of the Joint Insureds which reflects a risk that would be equivalent to two people of the same age, class of risk and smoking status."

The Policies do not define "adjusted," so we look to the ordinary, accepted meaning of the word.  See Garcia, 969 So. 2d at 291–92.  "Adjusted" is defined as "accommodated to suit a particular set of circumstances or requirements." Adjusted, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/adjusted (last visited July 28, 2021).  In context, then, Joint

Equal Age means that the age of the Joint Insureds is accommodated to suit a particular set of circumstances or requirements. Id. The particular set of circumstances or requirements here "reflect[] a risk that would be equivalent to two people of the same age, class of risk and smoking status." Thus, the reasonable interpretation is that Gary's and Bernice's respective ages were adjusted to reflect a single age to be used when applying the terms of a life insurance policy covering two separate people.[7]

Other provisions in the Policies support this interpretation. In a different section, the terms "Joint Equal Attained Age" or "attained Joint Equal Age" are used.[8] One use of Joint Equal Attained Age is reflected in the "Table of Death Benefit Factors," which affects the amount of death benefits paid to the insureds. That Joint Equal Attained Age is reflected as a single number to reflect one age for the Joint Insureds. And, when the Policies were issued, they listed the Joint Equal Age as a single age—73 and 74, respectively. This reflects that the Joint Insureds reached the next Joint Equal Attained Age as each year passed. Attained, Merriam-Webster.com.

---

[7] The understanding that a life insurance policy covering two people must equate the insureds' potentially differing ages into one age is also reflected in the Internal Revenue Code. Cf. 26 C.F.R. § 1.7702-2(c) (stating "the attained age of the insured is determined . . . as if the youngest individual were the only insured under the contract").

[8] "Attained" is defined as "to reach as an end." Attained, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/attained (last visited July 28, 2021).

Reading these provisions together, Ruderman, 117 So. 3d at 948, "the reasonable, logical and rational interpretation" of the Policies is that they terminated at "the policy anniversary nearest Joint Equal Age 100." Triple E Dev. Co. v. Floridagold Citrus Corp., 51 So. 2d 435, 438–39 (Fla. 1951) (en banc). The termination dates were thus July 9, 2017, and December 20, 2017—the policy anniversaries in the year the Joint Insureds turned 100 years old. And, because Transamerica did not terminate the Policies prematurely, it therefore did not breach the contract.

Because our de novo review concludes that the Policies were not ambiguous, and thus terminated in 2017 before Gary's death, we grant summary judgment to Transamerica on the Plaintiffs' breach of contract claim.

*    *    *

In sum, the district court erred in finding that the Policies were ambiguous with respect to the term "Joint Equal Age."[9] We therefore **VACATE** the court's order awarding the Plaintiffs damages; we **REVERSE** the district court's order granting summary judgment in favor of the Plaintiffs on their breach of contract

---

[9] We therefore need not address Transamerica's arguments about the district court's failure to consider extrinsic evidence to resolve any alleged ambiguity in the Policies and improper calculation of the amount of damages.

claim; and we **REMAND** to the district court with instruction to enter summary judgment in favor of Transamerica on the breach of contract claim.[10]

---

[10] The Plaintiffs' motion to supplement the record is **DENIED** as moot.