## In re LINERBOARD ANTITRUST LITIGATION.

### No. MDL 1261.

United States District Court, E.D. Pennsylvania.

Aug. 27, 2004.

Allen D. Black, Roberta D. Liebenberg, Fine, Kaplan & Black, Philadelphia, PA, H. Laddie, Montague, Jr., John R. Taylor, Berger & Montague PC, Philadelphia, PA, Howard Langer, Langer & Grogan P.C., Philadelphia, PA, Joseph Bruckner, Lockridge, Grindal, Nauden, Holstein, PLLP, Minneapolis, MN, Robert J. Larocca, Kohn, Swift & Graf, P.C., Philadelphia, PA, Anthony J. Bolognese & Associates, LLC, Philadelphia, PA, Carol V. Gilden, Michael Jerry Freed, Steven A. Kanner, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, Chicago, IL, Howard Langer, Langer & Grogan, P.C., Philadelphia, PA, Robert J. Larocca, Kohn Swift & Graf, P.C., Philadelphia, PA, for plaintiffs.

Andrew G. Klevorn, Kathleen M. Mulligan, Nathan P. Eimer, Sidley & Austin, Chicago, IL, Barbara W. Mather, Pepper, Hamilton, LLP, Philadelphia, PA, Eric F. Gladbach, New York City, John P. Hooper, New York City, Mark Mc Careins, Winston & Strawn, Chicago, IL, Scott L. Fast, Ralph G. Wellington, Sherry A. Swirsky, Schnader, Harrison, Segal and Lewis L.L.P., Philadelphia, PA, Paul H. Saint–Antoine, Drinker, Biddle & Reath LLP, Philadelphia, PA, Douglas J. Kurtenbach, Robert F. Huff, Jr., Kirkland & Ellis, Daniel W. Smith, Norman M. Hirsch, Jenner & Block, Chicago, IL, Daniel B. Huyett, Stevens & Lee, Reading, PA, Bruce Michael Zessar, for defendants.

James J. Rodgers, Dilworth, Paxson L.L.P., Philadelphia, PA, Joseph M. Donley, Kittredge, Donley, Elson, Fullem & Embick, Philadelphia, PA, George Bochetto, Bochetto & Lentz PC, Warren Rubin, Law Offices of B.M. Gross PC, Philadelphia, PA, James J. Rodgers, Dilworth Paxson L.L.P., Philadelphia, PA, William J. Blechman, Kenny, Nachwalter, Seymour, Arnold, Critchlow and Spector, Miami, FL, for movants.

### MEMORANDUM

DuBOIS, District Judge.

## I.  INTRODUCTION

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' State Law Claims (Docket No. 369, filed April 28, 2004), Opposition to Defendants' Motion to Dismiss Plaintiffs' State Law Claims (Docket No. 369, filed May 19, 2004), Memorandum of Plaintiff Perdue Farms Incorporated in Opposition to Defendants' Motion for Judgment on the Pleadings (Docket No. 383, filed May 24, 2004), Reply in Support of Defendants' Motion for Judgment on the Pleadings (Docket No. 386, filed June 2, 2004), Reply in Support of Defendants' Motion to Dismiss State Law Claims (Docket No. 387, filed June 2, 2004) and Surreply of Plaintiff Perdue Farms Incorporated in Opposition to Defendants' Motion for Judgment on the Pleadings (Docket No. 390, filed June 4, 2004). For the reasons that follow, the defendants' Motion to Dismiss is denied.

## II.  FACTUAL AND PROCEDURAL HISTORY

This is an antitrust action involving allegations that a number of U.S. manufacturers of linerboard engaged in a combination and conspiracy in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[1] The Court sets

---

**1.** Linerboard includes any grade of paperboard suitable for use in the production of corrugated sheets, which are in turn used in the manufacture of corrugated boxes and for a variety of industrial and commercial applications. Corrugated sheets are made by gluing a fluted sheet which is not made of linerboard, known as the corrugating medium, between facing sheets of

forth only an abbreviated factual and procedural history as pertinent to Defendants' Motion to Dismiss Plaintiffs' State Law Claims. The factual background of the case is described at length in this Court's Memorandum dated October 4, 2000 denying defendants' Motion to Dismiss, *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2000 WL 1475559, at *1–3 (E.D.Pa. Oct.4, 2000) (*"Linerboard I"*), its Memorandum dated September 4, 2001 certifying classes of direct purchasers of corrugated boxes and corrugated sheets, *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 201–04 (E.D.Pa.2001) (*"Linerboard II"*), the Opinion of the Court of Appeals for the Third Circuit affirming the September 4, 2001 Memorandum and Order, *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 147–49 (3d Cir.2002) (*"Linerboard III"*), this Court's Memorandum dated August 26, 2003 approving the final settlement between plaintiffs classes and two of the defendants, Temple–Inland, Inc. and Gaylord Container Corporation, *In re Linerboard Antitrust Litig.*, 296 F.Supp.2d 568, 573–575 (E.D.Pa. 2003) (*"Linerboard IV"*), and this Court's Memorandum dated June 2, 2004 awarding class counsel attorneys fees, *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, *1–3 (E.D.Pa. Jun.2, 2004) (*"Linerboard V"*).

## A. The Class Case

The price fixing conspiracy that is the subject of this litigation was the focus of a 1998 complaint by the Federal Trade Commission ("FTC") against Stone Container Corporation ("Stone").[2] See *In re Linerboard Antitrust Litigation*, 2000 WL 1475559, *1 (E.D.Pa. Oct.4, 2000). Soon after the FTC filed its complaint, three lawsuits were filed in the Northern District of Illinois on behalf of purchasers of corrugated sheets ("Sheets Complaint I").[3]

Four other lawsuits were filed against Stone in the Eastern District of Pennsylvania on behalf of purchasers of corrugated boxes in late 1998 ("Box Plaintiffs").[4] On February 12, 1999 the Judicial Panel on Multidistrict Litigation transferred the actions pending in the Northern District of Illinois to this Court for all further pretrial proceedings. On May 14, 1999 the Corrugated Box Plaintiffs filed the First Amended and Consolidated Class

---

linerboard; corrugated sheets are also referred to as containerboard. The defendants named in the instant lawsuits are major integrated manufacturers and sellers of linerboard, corrugated sheets and corrugated boxes.

**2.** The FTC charged Stone with a unilateral violation of Section 5 of the Federal Trade Commission Act. According to the FTC, Stone had attempted to reduce linerboard inventories and had "invite[d]" some of its competitors to join in a "coordinated price increase." The FTC did not allege that any other manufacturer had accepted Stone's "invitation," nor did it allege the existence of any conspiracy. Stone and the FTC entered into a consent decree. In doing so, Sone did not admit liability for its alleged unilateral misconduct, and the consent decree has no preclusive effect on Stone in this private party action. See *In re Linerboard Antitrust Litigation*, 2000 WL 1475559, *1 (E.D.Pa. Oct.4, 2000).

**3.** *General Refractories Co. v. Stone Container Corp.*, Civil Action No. 99–1341 (transferred on Mar. 16, 1999 to E.D. Pa.), and originally No. 98 C 3543 (filed June 8, 1998, N.D. Ill.); *Albert I. Halper Corrugated Box Co. v. Stone Container Corp.*, Class Action No. 99–1396 (transferred on Mar. 19, 1999 to E.D. Pa.), and originally No. 98 C 4659 (filed July 28, 1998, N.D. Ill.) and *Crest Meat Co., Inc. v. Stone Container Corp.*, Civil Action No. 99–1397 (transferred on Mar. 19,

1998 to E.D. Pa.), and originally No. 98 C 4612 (filed July 27, 1998, N.D. Ill.). These cases named only Stone as a defendant, but plaintiffs alleged that there were unnamed coconspirators involved in the antitrust conspiracy, including inter alia, Jefferson Smurfit Corp. See Sheets Complaint I (all three complaints) at ¶ 9. Together, these plaintiffs are referred to as the Corrugated Sheet Plaintiffs or Sheet Plaintiffs. The Corrugated Sheet Plaintiffs aver in Sheets Complaint I that they were harmed by an industry-wide combination to artificially raise the price of linerboard.

**4.** *Winoff Industries, Inc. v. Stone Container Corp.*, Civil Action No. 98–5055 (filed Sep. 23, 1998, E.D. Pa.), *Oak Valley Farms, Inc. v. Stone Container Corp.*, Civil Action No. 98–5251 (filed Oct. 2, 1998, E.D. Pa.), *Garrett Paper, Inc. v. Stone Container Corp.*, Civil Action No. 98–5228 (filed Oct. 1, 1998, E.D. Pa.), and *Local Baking Products, Inc. v. Stone Container Corp.*, Civil Action No. 98–5384 (filed Oct. 9, 1998, E.D. Pa.). Together, these plaintiffs are referred to as the Corrugated Box Plaintiffs or Box Plaintiffs. The Corrugated Box Plaintiffs also aver that they were harmed by an industry-wide combination to artificially raise the price of linerboard. The four corrugated box actions in the Eastern District of Pennsylvania were consolidated by stipulation and order dated December 17, 1998 pursuant to Federal Rule of Civil Procedure 42(a).

Action Complaint ("Corrugated Box Amended Complaint"). Stone and the following "Non–Stone" Defendants were named in the Corrugated Box Amended Complaint: Jefferson Smurfit Corp., Smurfit–Stone Container Corp., International Paper Co., Georgia Pacific Corp., Weyerhaeuser Paper Co., Temple Inland Inc., Gaylord Container Corp., Union Camp Corp., Simpson Tacoma Kraft Co., Tenneco Inc., Tenneco Packaging, and Packaging Corp. of America. According to the Corrugated Box Amended Complaint, the Non–Stone Defendants accepted Stone's "invitation" to restrict the production of linerboard and artificially raise prices, resulting in an antitrust conspiracy in violation of the Sherman Act.

On May 18, 1999 a separate class action complaint was filed in the Eastern District of Pennsylvania on behalf of purchasers of corrugated sheets ("Sheets Complaint II"). This complaint names eleven of the twelve Non–Stone Defendants identified in the Corrugated Box Amended Complaint. Like the Corrugated Box Amended Complaint, Sheets Complaint II alleges that the named Non–Stone Defendants unlawfully conspired with Stone and each other to artificially raise the price of linerboard.

By Memorandum and Order dated September 4, 2001, this Court certified the following two plaintiff classes: a "sheet class" consisting of buyers of corrugated sheets and a "box class" consisting of purchasers of corrugated containers. *Linerboard II*, 203 F.R.D. at 224. On September 5, 2002, the Court of Appeals affirmed the ruling of this Court. By Order dated October 16, 2002, the Court of Appeals denied defendants' petition for *en banc* review. On January 14, 2003, defendants filed a Petition for Writ of Certiorari to the United States Supreme Court. The petition was denied on April 21, 2003. Thereafter, the class case was resolved through a series of partial settlements for a total of $202,572,489.[5]

### B.  *The Direct Actions*

One-hundred and forty entities opted out of the classes by filing Requests for Exclusion on or before June 9, 2003.[6] A detailed description of the notice to classes and the procedural history involving the opt-outs from the class is provided in this Court's Memorandum of this Court of September 5,

---

**5.** By Order dated August 26, 2003, this Court approved a partial settlement in the amount of $8 million between plaintiff classes and Temple–Inland, Inc. and Gaylord Container Corp. The $8 million settlement was reduced to$7.2 million in accordance with the terms of the settlement agreement based on the number of parties that subsequently opted-out of the classes. This first partial settlement was described by petitioners as an "ice-breaker—a settlement" that would lead to further settlements.

Within a month of Court approval of the ice-breaker settlement, on September 22, 2003, the plaintiff classes and defendants International Paper Company and Union Camp Corporation, Georgia Pacific Corporation, and Weyerhauser Company announced they had reached a settlement in the total amount of $68 million. The Court granted final approval of that settlement on December 8, 2003.

Prior to that date, in October and November 2003, the parties announced the two additional partial settlements with defendants Packaging Corporation of America, Tenneco, Inc., and Tenneco Packaging, Inc. (The "PCA settlement") in the amount of $43 million and with defendants Stone Container Corporation, Jefferson Smurfit Corporation, and Smurfit Stone Container Corporation (the "Stone settlement") in the amount of $92.5 million. As a result of a "most favored nation's clause" in the PCA settlement agree-

ment, the terms of the Stone settlement triggered a reduction in the PCA settlement from $43 million to $34 million. The Court granted final approval of both the PCA settlement and the Stone settlement by Memorandum and Order dated March 21, 2004. With the Court's approval of these last two partial settlements, all claims in the class action were resolved for a total of $202,572,489.

**6.** Copies of the Record of Potential Class Members Who Excluded Themselves from the Classes is appended to this Court's Memorandum and Order dated December 8, 2003 approving the Settlement Agreement between Temple–Inland, Inc. and Gaylord Container Corporation; this Court's Memorandum and Order dated December 8, 2003, granting Class Plaintiffs' Motion for Final Approval of Settlement Agreement Between the Class and International Paper Company and Union Camp Corporation, Georgia–Pacific Corporation, and Weyerhauser Company; and this Court's Memorandum and Order dated April 21, 2004 granting Class Plaintiffs' Motion for Final Approval of the Settlements with Defendants Packaging Corporation of America, Inc., Tenneco, Inc. And Tenneco Packaging Inc. and with Defendants Stone Container Corporation, Jefferson Smurfit Corporation, and Smurfit Stone Container Corporation.

2003. Of the 140 Requests for Exclusion, 13 groups of opt-outs subsequently filed direct action actions against defendants. As of the date of this memorandum, 11 of those groups have claims against one or more of the defendants outstanding and one group has voluntarily dismissed its claims against all defendants." The 11 direct actions are as follows:

1. *Perdue Farms Incorporated v. Stone Container Corporation, et al.,* No. 03–1702 (D. Md. filed June 9, 2003);

2. *Sara Lee Corporation, et al. v. Smurfit Stone Container Corporation, et al.,* No. 03–3939 (N.D. Ill. filed June 10, 2003);

3. *Procter & Gamble Company, et al. v. Stone Container Corporation, et al.,* No. 03–3944 (N.D. Ill. filed June 10, 2003);

4. *United States Gypsum Company, et al. v. Stone Container Corporation, et al.,* No. 03–4251 (N.D. Ill. filed June 10, 2003);

5. *Smithfield Foods, Inc., et al. v. Smurfit Stone Container Corporation, et al.,* No. 03–3968 (N.D. Ill. filed June 11, 2003);

6. *Hormel Foods Corporation, et al. v. Stone Container Corporation, et al.,* No. 03–3421 (D. Minn. filed June 13, 2003);

7. *Milne Fruit Products, Inc., et al. v. Stone Container Corporation, et al.,* No. 03–4049 (N.D. Ill. filed June 13, 2003);

8. *Kellogg Company, et al. v. Smurfit Stone Container Corporation, et al.,* No. 03–4213 (N.D. Ill. filed June 19, 2003)

9. *Farmland National Beef Packing Co. v. Stone Container Corporation, et al.,* No. 03–1312 (D. of Kansas filed August 29, 2003).

10. *Mars Inc., et al. v. Stone Container Corporation, et al.,* No. 03–6977 (N.D. of Ill. filed October 1, 2003); and

11. *Conopco, Inc., et al. v. Smurfit Stone Container Corporation, as successor to Stone Container Corporation, et al.,* No. 03–3549 (E.D. Pa. filed June 9, 2003).

Of the above 11 cases, only the *Perdue* plaintiffs' Complaint alleged violations of state antitrust laws, the Maryland Antitrust Act ("MATA"), in addition to federal antitrust violations. On April 1, 2004, plaintiffs in the *Procter & Gamble, Milne Fruit* and *Mars* cases moved to amend their complaints to add causes of action under the laws of six states: Colorado, Indiana, Kansas, South Carolina, Tennessee and Wisconsin. The defendants did not oppose the motion to amend stating that they would instead file motions to dismiss. By Order dated April 1, 2004, the Court granted the motion to amend. These plaintiffs subsequently filed amended complaints and defendants filed responses. Thereafter, defendants moved to dismiss the state law claims in the *Procter & Gamble, Milne Fruit* and *Mars* Amended Complaints under Federal Rule of Civil Procedure 12(b)(6) and the Maryland Antitrust Act claims in the *Perdue* Complaint under Federal Rule of Civil Procedure 12(c).

On April 26, 2004, the plaintiffs in the *Conopco, Kellogg, U.S. Gypsum, Hormel* and *Perdue* direct actions sought leave to amend their complaints consistent with the amendments in the *Proctor & Gamble, Milne Foods* and *Mars* direct actions. The Court decided to defer addressing that issue until it had ruled on the Defendants' Motion to Dismiss Plaintiffs' State Law Claims in the amended complaints filed in *Procter & Gamble, Milne Foods* and *Mars* direct actions. By Order dated June 22, 2004, the Court granted plaintiffs in the *Conopco, Kellogg, U.S. Gypsum, Hormel* and *Perdue* direct actions leave to file amended complaints in the event that it denied the instant Motion to Dismiss Plaintiffs' State Law Claims and provided that any such amended complaints would be deemed filed as of April 26, 2004, the date on which these direct action plaintiffs sought leave of court to do so.[7]

### III. *LEGAL STANDARDS*

#### A. *Rule 12(b)(6)*

Rule 12(b)(6) of the federal rules of civil procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may

---

**7.** Direct action plaintiffs argued that this was the appropriate relation back date. The Court, applying Federal Rule of Civil Procedure 15(c), concludes that the amendments relate back to the date on which the original direct action complaints were filed.

be raised by motion. Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Only those facts alleged in the complaint may be considered in deciding such a motion. *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994). A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Therefore, the facts alleged in plaintiffs' Amended Complaints are accepted as true in deciding this motion.

■ The "Third Circuit Rule" allows defendants to raise a limitations defense in a Rule 12(b)(6) motion where the "time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir.2002) (citing *Hanna v. U.S. Veterans Admin. Hosp.,* 514 F.2d 1092, 1094 (3d Cir.1975)). Thus, the Court will consider defendants limitations arguments in addressing the motion to dismiss.

### B. *Rule 12(c)*

A motion for judgment on the pleadings, made pursuant to Federal Rule of Civil Procedure 12(c), is treated under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Shelly v. Johns–Manville Corp.,* 798 F.2d 93, 97 n. 4 (3d Cir.1986); *Regalbuto v. City of Philadelphia,* 937 F.Supp. 374, 376 (E.D.Pa.1995). A motion for judgment on the pleadings will only be granted where the moving party has established that no material issue of fact remains to be resolved, and that the movant is entitled to judgment as a matter of law. *See Institute for Scientific Info., Inc. v. Gordon and Breach, Science Publishers, Inc.,* 931 F.2d 1002, 1005 (3d Cir.1991). In determining whether a material issue of fact exists, the court must view the facts and inferences to be drawn from the pleadings in the

light most favorable to the non-moving party. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 406 (3d Cir. 1993).

### IV. *DISCUSSION*

Defendants Motion to Dismiss raises three issues. First, defendants have moved under Rule 12(b)(6) to dismiss the antitrust claims under Colorado, Indiana, Kansas, South Carolina and Tennessee law in the *Mars, Milne Fruit* and *Procter & Gamble* Amended Complaints on the ground that they are time barred. Second, defendants have moved under Rule 12(c) to dismiss the *Perdue* plaintiffs' Maryland antitrust claims on the ground that they are time barred. Third, defendants have moved under Rule 12(b)(6) to dismiss the South Carolina and Wisconsin claims in the *Mars, Milne Fruit* and *Procter & Gamble* Amended Complaints on the ground that the conduct plaintiffs allege is not cognizable under the antitrust statutes of these states. The Court will address these issues in turn.

### A. MOTION TO DISMISS COLORADO, INDIANA, KANSAS, SOUTH CAROLINA, AND TENNESSEE CLAIMS UNDER RULE 12(b)(6) AS TIME BARRED

#### 1. *Colorado, Indiana, Kansas, South Carolina and Tennessee Statutes of Limitations*

■ Defendants argue that each plaintiff admits in its Amended Complaint that it knew of the alleged wrongful conduct by all defendants as of February 25 1998, when the FTC published its Complaint against Stone. Mars Am. Compl. ¶ 65; Milne Am. Compl. ¶ 61; Procter & Gamble Am. Compl. ¶ 127. In the alternative, defendants argue that plaintiffs knew of defendants' alleged conspiracy by May 18, 1999, the date the Sheets Complaint II was filed in this district, at the latest. Defendants Mot. to Dismiss 5. Defendants argue under the statutes of limitations of the states in question, using either February 25, 1998 or May 18, 1999, as a baseline, direct action plaintiffs claims are time barred.

By Order dated April 1, 2004, the Court granted the motion of the *Mars, Milne Fruit* and *Proctor & Gamble* plaintiffs to amend their complaints. Thereafter, the *Mars, Milne Fruit* and *Proctor & Gamble* plaintiffs filed Amended Complaints.

Federal Rule of Civil Procedure 15(c) provides that:

> An amendment of a pleading relates back to the date of the pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

The Court concludes that the Amended Complaints allege claims that arose out of the conduct set forth in the original Complaints filed in these cases. The *Mars* direct action was filed on October 1, 2003, the *Milne Fruit* direct action was filed on June 13, 2003, and the *Proctor & Gamble* direct action was filed on June 10, 2003. Thus, the amendments relate back to these dates under Rule 15(c).

### a. Colorado

Claims under the Colorado Antitrust Act of 1992 (Colo.Rev.Stat. § 6–4–104 et seq.) have a four year limitations period. "Any civil action commenced pursuant to this [Act] shall be brought within four years from the date such cause of action accrued." Colo. Rev.Stat. § 6–4–118.

Plaintiffs' four year deadline for filing their Colorado claims began when "the circumstances giving rise to the cause of action are discovered or should have been discovered in the exercise of reasonable diligence." *Id.*

Defendants argue that if direct action plaintiffs knew of the alleged wrongful conduct by defendants as of February 25 1998, then each plaintiff should have filed its complaint alleging violations of Colorado law by February 25, 2002. In the alternative, defendants argue that if direct action plaintiffs knew of the alleged wrongful conduct by defendants as of May 18, 1999, the Colorado claims should have been filed by May 18, 2003.

### b. Indiana

Under Indiana case law, the statute of limitations for claims under the Indiana antitrust statute (Ind.Code § 24–1–1–1 et seq.) is two years. *Gibson v. Miami Valley Milk Producers, Inc.,* 157 Ind.App. 218, 299 N.E.2d 631, 637 (1973) (it is "without dispute that the two year statute of limitations" barred claims under the Indiana antitrust statute); *Sandidge v. Rogers,* 167 F.Supp. 553, 556 (S.D.Ind.1958); *cf. Citizens Nat'l Bank of Grant County v. First Nat'l Bank of Marion,* 165 Ind.App. 116, 331 N.E.2d 471, 483 (1975) (assuming that two year statute of limitations applied to Indiana state antitrust claim).

■ In Indiana, a cause of action accrues when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained. *Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 842 (Ind.1992) (finding discovery rule applies to all tort claims); *Burks v. Rushmore,* 534 N.E.2d 1101, 1103–04 (Ind.1989); *Meisenhelder v. Zipp Express Inc.,* 788 N.E.2d 924, 927 (Ind.Ct.App.2003). 10 See Ind.Code Ann. § 34–11–2–4 ("An action for ... forfeiture of penalty given by statute must be commenced within two years after the cause of action accrues.").

Defendants argue that if direct action plaintiffs knew of the alleged wrongful conduct by defendants as of February 25 1998, then each plaintiff should have filed its complaint alleging violations of Indiana law by February 25, 2000. In the alternative, defendants argue that if direct action plaintiffs knew of the alleged wrongful conduct by defendants as of May 18, 1999, the Indiana claims should have been filed by May 18, 2001.

### c. Kansas

Kansas courts apply a three year statute of limitations for statutory claims under the Kansas Restraint of Trade Act (Kan. Stat. Ann. § 50–101 et seq.).11 See Kan. Stat. Ann. § 60–512(2) ("The following actions shall be brought within three (3) years:...An action upon a liability created by statute other than a penalty or forfeiture"); *see also Four B*

*Corp. v. Daicel Chem. Indus., Ltd.,* 253 F.Supp.2d 1147, 1156 (D.Kan.2003) (finding the "applicable statute of limitations [for antitrust liability] is three years, as set out in § 60–512(2)") (citing *McCue v. Franklin,* 156 Kan. 1, 131 P.2d 704 (1942)); *In re Vitamins Antitrust Litig.,* 2000 WL 1524912, at *6 (D.D.C. July 14, 2000) ("claims under the Kansas Antitrust Statutes are governed by the three-year statute of limitations set forth in the general Kansas statutes.").

In Kansas, the statute of limitations began to run when the direct action plaintiffs reasonably could have learned of their potential cause of action. See *Med James, Inc. v. Barnes,* 31 Kan.App.2d 89, 61 P.3d 86, 93 (2003) ("Cases in Kansas have repeatedly held that the critical information to trigger the running of the statute of limitations is knowledge of the fact of injury, not the extent of injury."); *Roof–Techs Int'l v. State,* 30 Kan.App.2d 1184, 57 P.3d 538, 546 (2002) ("The critical information is knowledge of the fact of injury, not the extent of injury.") (emphasis in original).

Defendants argue that if direct action plaintiffs knew of the alleged wrongful conduct by defendants as of February 25 1998, then each plaintiff should have filed its complaint alleging violations of Kansas law by February 25, 2001. In the alternative, defendants argue that if direct action plaintiffs knew of the alleged wrongful conduct by defendants as of May 18, 1999, the Kansas claims should have been filed by May 18, 2002.

### d. South Carolina

■ The South Carolina antitrust statute (S.C.Code Ann. § 39–5–10 et seq.) contains no express statute of limitations provision. Therefore, the general three year statute of limitations period for "an action upon a liability created by statute other than a penalty or forfeiture" is applicable. S.C.Code Ann. § 15–3–530. This three year statutory period is analogous to the three-year statute of limitations for claims under South Carolina's Unfair Trade Practices Act, S.C.Code Ann. § 39–5–10 et seq. See S.C.Code Ann. § 39–5–150 (action may not be brought "more than three years after discovery of the unlawful

conduct which is the subject of the suit."). In South Carolina, the statute of limitations begins to run when the plaintiff "knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct." *Dean v. Ruscon Corp.,* 321 S.C. 360, 468 S.E.2d 645, 647 (1996). This requires plaintiffs to act with "promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist." *Id.*

Defendants argue that if direct action plaintiffs knew of the alleged wrongful conduct by defendants as of February 25 1998, then each plaintiff should have filed its complaint alleging violations of South Carolina law by February 25, 2001. Defendants argue that in the alternative, if direct action plaintiffs knew of the alleged wrongful conduct by defendants as of May 18, 1999, the South Carolina claims should have been filed by May 18, 2002.

### f. Tennessee

Tennessee applies its general three year statute of limitations to claims under the Tennessee Trade Practices Act (Tenn.Code § 47–25–101 et seq.). See Tenn.Code § 28–3–105 ("The following actions shall be commenced within three (3) years from the accruing of the cause of action ... (3) Civil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefore, when no other time of limitation is fixed by the statute creating such liability."); *see also Leech v. Levi Strauss & Co.,* 1980 WL 4696, at *3 (Tenn. Ch. Ct. Sept. 25, 1980) (holding that a private antitrust action for injury sounds in tort and is subject to a three year statute of limitations).

■ Under Tennessee law, the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. *Foster v. Harris,* 633 S.W.2d 304 (Tenn.1982); *McCroskey v. Bryant Air*

*Conditioning Co.,* 524 S.W.2d 487, 491 (Tenn. 1975). The Tennessee Court of Appeals explained that the claim accrues upon "discovery of the existence of a right of action, that is, facts which would support an action for tort against the tortfeasor. Such facts include not only the existence of an injury, but the tortious origin of the injury." *Hathaway v. Middle Tenn. Anesthesiology, P.C.,* 724 S.W.2d 355, 359 (Tenn.Ct.App.1986).

Defendants argue that if direct action plaintiffs knew of the alleged wrongful conduct by defendants as of February 25 1998, then each plaintiff should have filed its complaint alleging violations of Tennessee law by February 25, 2001. Defendants argue that in the alternative, if direct action plaintiffs knew of the alleged wrongful conduct by defendants as of May 18, 1999, the Tennessee claims should have been filed by May 18, 2002.

### 2. *Tolling the Colorado, Indiana, Kansas, South Carolina and Tennessee Statutes of Limitations*

■ The *Mars, Milne Fruit* and *Proctor & Gamble* plaintiffs argue that the state statutes of limitations were tolled during the five years that defendants were contesting the issue of class certification, from the first date of filing in 1998 to this Court's Order of April 23, 2004 granting final certification of the two classes citing the rationale of the Supreme Court decisions *American Pipe & Const. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) and *Crown Cork & Seal Inc. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Pl.'s Opp. to Def.'s Mot. to Dismiss Pl.'s State Law Claims 3. Plaintiffs filed their direction actions within 10 months of the Order of April 23, 2004, thus within even the shortest statute of limitations of two years.

The Court notes as an initial matter, that if the statutes of limitations on the plaintiffs' claims in *Mars, Milne Fruit* and *Proctor & Gamble* plaintiffs claims were tolled because of the pendency of the class action, they were tolled until those plaintiffs filed Requests for Exclusion from the classes, not, as plaintiffs assert, when the Court issued its final certification order. *See Realmonte v. Reeves,* 169 F.3d 1280, 1284 (10th Cir.1999) (citing *Tosti v. City of Los Angeles,* 754 F.2d 1485, 1488 (9th Cir.1985)) (when class certification has been granted, statute of limitations begins running anew from date class member opts out). These plaintiffs filed Requests for Exclusion on or before June 9, 2003. Thus, if the statutes of limitations were tolled, direct action plaintiffs claims are timely. The Court will analyze the arguments on this issue using the opt out date as the baseline.

■ Filing a federal class action tolls the federal statute of limitations on individual claims pending a decision on class certification in the same federal court based on the facts alleged in the class case. *Crown Cork & Seal Inc. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *American Pipe & Const. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). The Supreme Court reasoned that the purpose of Fed. R.Civ.P. 23 would not be served by precluding putative class members from intervening in a class case if they failed to do so within the applicable statute of limitations. *American Pipe,* 414 U.S. at 550–52, 94 S.Ct. 756. The Court further explained:

> Not until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case. It follows that even as to asserted class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings, the later running of the applicable statute of limitations does not bar participation in the class action and in its ultimate judgment.

*Id.* at 552, 94 S.Ct. 756. The Supreme Court expressed a number of reasons for its holding in *American Pipe.* First, the Court reasoned that refusing to extend the tolling rule to class members would "deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure," leading to the filing of numerous protective, duplicative and in many cases, unnecessary, suits by individual class mem-

bers. *Id.* at 553–54, 94 S.Ct. 756. Moreover, the Supreme Court concluded that the tolling rule is not inconsistent with the purposes behind statutes of limitations, namely, preventing plaintiffs from bringing "stale claims" with no prior notice to defendants.

*Crown, Cork & Seal* extended the ruling in *American Pipe* to cases in which class members filed individual suits instead of intervening in the class action after the denial of class certification. *Id.* at 554, 94 S.Ct. 756. In so ruling the Court reasoned that because defendants were put on notice of the factual predicates for all of the potential antitrust claims of class members, no "potential for unfair surprise" would be created by tolling the statutes of limitations for plaintiffs' claims during the pendency of class certification. *Crown, Cork,* 462 U.S. at 353, 103 S.Ct. 2392 (once class action is filed, "[t]he defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class").

*American Pipe's* holding has been extended to situations, such as the one presented in this case, in which a class is certified and putative class members choose to opt out of the litigation and file individual suits against the defendants. *See, e.g., Realmonte v. Reeves,* 169 F.3d 1280, 1284 (10th Cir.1999) (collecting cases). In applying the *American Pipe* rule to class members who opted out of a class after class certification was granted, the *Realmonte* court stated:

> Considering the Supreme Court's rationale that tolling the applicable statute of limitations during the course of a class member's participation would serve to prevent the "needless duplication of motions" and protective filings by parties seeking to preserve their rights, we believe that, in this case, the tolling rule would even be more applicable.

*Id.* Continuing, the court stated that the Rule 23(c)(2) requirement of notice to all class members that can upon request be excluded from the class would be meaningless if the statute of limitations for such members' subsequent individual claims were not tolled. *Id.* (citing *Crown, Cork & Seal,* 462 U.S. at 351–52, 103 S.Ct. 2392).

The *Mars, Milne Fruit* and *Proctor & Gamble* plaintiffs contend that none of the states in question have addressed application of the rationale of *American Pipe* and *Crown, Cork* to toll the statute of limitations on state antitrust claims during the pendency of an antitrust class action filed in federal court, hereafter referred to as "cross-jurisdictional class action tolling," but that the highest court of each state would adopt cross-jurisdictional class action tolling under the facts of the present case. Defendants agree that neither the highest court nor the legislature of those states have adopted cross jurisdictional class action tolling and argue that this Court should only apply a cross-jurisdictional tolling rule where the highest court or legislature has expressly adopted such a rule.

In *Chardon v. Soto,* 462 U.S. 650, 656–57 (1983), a case involving a claim under 42 U.S.C. § 1983, the Supreme Court ruled that a federal court applying a state statute of limitations must also apply the state law of tolling. However, *Chardon* did not address the situation presently before this Court—how class action tolling applies in an antitrust case involving state and federal claims when the applicable state law does not provide for tolling.

In analyzing plaintiffs tolling argument the Court will examine: (1) the federal interest in tolling the state statutes of limitations: (2) whether the highest court of the state has or would adopt cross-jurisdictional class action tolling for antitrust class actions filed in federal court; (3) whether plaintiffs state law claims are sufficiently similar to plaintiffs federal claims to toll the state statutes of limitations; and (4) the prejudice suffered by defendants if the Court tolls the statutes of limitations.

#### a. The Federal Interest

As the Eighth Circuit held in *Adams Public School District v. Asbestos Corporation, Ltd.,* 7 F.3d 717 (8th Cir.1993), "in *American Pipe* the [Supreme] Court identified a strong federal interest in ensuring 'the efficiency and economy of the class-action procedure.' " *Id.* at 718 (citing *Chardon,* 462 U.S. at 661, 103 S.Ct. 2611). Thus, the Court will consid-

er the federal interest in the efficiency of the class action procedure in applying state statutes of limitations.

In the antitrust context, declining to adopt cross-jurisdictional class action tolling will invite the filing of numerous protective, duplicative and in many cases, unnecessary, suits by class members that want to consider filing claims under state antitrust law not included in a federal class action complaint. *American Pipe*, 414 U.S. at 553–54, 94 S.Ct. 756. These suits would undermine the efficiency of federal class actions. For instance, in the present case, because the defendants made sales to buyers in many states, class members would have had to file protective suits in every state in which a class member potentially made purchases from defendants pending confirmation of those sales through discovery. Thus, in addition to filing protective suits in the seven states in question, adopting defendants' argument would mean that class members would have been required to file protective suits in a number of other states in order to preserve their state law claims. Moreover, if there were diversity of citizenship, defendants could remove such suits to federal court. Once in federal court, these cases would likely be transferred by the Judicial Panel on Multidistrict Litigation to this Court. Additional suits in this Court would further complicate these proceedings and consume significant judicial resources and unnecessarily increase the cost of litigation to the parties.

Further, pendency of suits in state court would require coordination of discovery in the federal case with discovery in the state cases that were not removed. The Manual for Complex Litigation counsels courts to "encourage techniques that coordinate discovery and avoid duplication." Manual for Complex Litigation (4) § 20.14 (2004). A cross-jurisdictional class action tolling rule accomplishes both goals. The Court believes that this federal interest alone is sufficient to warrant tolling of state statutes of limitations. *Adams Public School District*, 7 F.3d 717 (8th Cir.1993) ("we view the federal interest as sufficiently strong to justify tolling in a diversity case when the state law provides no relief").

### b. The States' Interests

The Court concludes that, independent of the federal interest involved, each of the states in question would adopt cross-jurisdictional class action tolling in antitrust class actions filed in federal court. In the absence of controlling state law, this Court must consider all available resources, including appellate court decisions of the individual courts in question, other state and federal decisions, and the general trend of authority, to determine how the highest courts of the various states in question would decide the issue. *Sawtell v. E.I. du Pont de Nemours and Co.*, 22 F.3d 248, 250 (10th Cir.), *cert. denied*, 513 U.S. 917, 115 S.Ct. 295, 130 L.Ed.2d 209 (1994). The Court will analyze the statutes and laws of each state individually but first will consider "other state and federal decisions, and the general trend of authority" as it applies in general to the laws of all the states in question.

A number of states' highest courts have addressed cross-jurisdictional tolling. The Supreme Court of Illinois in *Portwood v. Ford Motor Co.*, 183 Ill.2d 459, 233 Ill.Dec. 828, 701 N.E.2d 1102 (1998), declined to adopt cross-jurisdictional tolling under the following rationale:

> Tolling the statute of limitations for individual actions filed after the dismissal of a class action is sound policy when both actions are brought in the same court system. In such instances, failing to suspend the limitation period would burden the subject court system with the protective filings described by the Supreme Court in *American Pipe* and *Crown, Cork.* Tolling the statute of limitations for purported class members who file individual suits within the same court system after class status is denied therefore serves to reduce the total number of filings within that system.

> Tolling a state statute of limitations during the pendency of a federal class action, however, may actually increase the burden on that state's court system, because plaintiffs from across the country may elect to file a subsequent suit in that state solely to take advantage of the generous tolling

rule. Unless all states simultaneously adopt the rule of cross-jurisdictional class action tolling, any state which independently does so will invite into its courts a disproportionate share of suits which the federal courts have refused to certify as class actions after the statute of limitations has run. Although plaintiffs assert that the majority of courts which have considered this issue have chosen to adopt cross-jurisdictional tolling to preserve claims under state law, our research indicates precisely the opposite. At any rate, it is apparent that very few states to date have even considered the issue of cross-jurisdictional tolling, let alone adopted it. Given this state of affairs, it is clear that adoption of cross-jurisdictional class tolling in Illinois would encourage plaintiffs from across the country to bring suit here following dismissal of their class actions in federal court. We refuse to expose the Illinois court system to such forum shopping.

Furthermore, because state courts have no control over the work of the federal judiciary, we believe it would be unwise to adopt a policy basing the length of Illinois limitation periods on the federal courts' disposition of suits seeking class certification. State courts should not be required to entertain stale claims simply because the controlling statute of limitations expired while a federal court considered whether to certify a class action.

*Id.* at 1104.

The Supreme Court of Ohio reached the opposite result and adopted cross-jurisdictional tolling in *Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St.3d 380, 763 N.E.2d 160 (2002), an antitrust case. The *Vaccariello* court addresses the Illinois Supreme Court *Portwood* decision and provided the following rationale for cross jurisdictional tolling in antitrust cases:

In *Portwood v. Ford Motor Co.*, 183 Ill.2d 459, 233 Ill.Dec. 828, 701 N.E.2d 1102, 1104 (1998) the Supreme Court of Illinois rejected cross-jurisdictional tolling

"because plaintiffs from across the country may elect to file a subsequent suit in that state solely to take advantage of the generous tolling rule," thereby burdening Illinois' court system. We are not persuaded that this is a realistic potential problem.

Our holding today merely allows a plaintiff who could have filed suit in Ohio irrespective of the class action filed in federal court in Pennsylvania to rely on that class action to protect her rights in Ohio. To do otherwise would encourage all potential plaintiffs in Ohio who might be part of a class that is seeking certification in a federal class action to file suit individually in Ohio courts to preserve their Ohio claims should the class certification be denied. The resulting multiplicity of filings would defeat the purpose of class actions. Our holding does not invite plaintiffs who have no relationship to Ohio to file suit in our courts. Instead, only those plaintiffs who could have otherwise filed suit in Ohio will be able to file suit pursuant to the tolling rule we espouse today.

*Id.* at 163.

The Court finds the Ohio Supreme Court's rationale in *Vaccariello* more compelling in an antitrust case. In so ruling, the Court notes that *Portwood* involved products liability claims. "Several courts which have considered the applicability of the *American Pipe* tolling rule to products liability or mass tort cases have ruled against tolling" on the ground that it led to forum shopping—the filing of lawsuits in states which permitted tolling. *Staub v. Eastman Kodak Co.*, 320 N.J.Super. 34, 726 A.2d 955, 964 (1999) (collecting cases). This Court agrees with the Ohio Supreme Court that the Illinois Supreme Court's concerns about encouraging litigation expressed in *Portwood* are not realistic in antitrust cases. Unlike products liability cases which, because of our national economy, could potentially be filed in any state, claims under state antitrust statutes require much greater contacts between the potential claimant and the forum state.[8] *See,*

8. The states have adopted various standards for assessing the requisite contacts between a claimant and a state's economy in order to give rise to a claim under the state's antitrust laws. Many,

but not all, have adopted what amounts to an effects-based standard. *See, e.g., Abbott Labs. v. Durrett*, 746 So.2d 316 (Ala.1999) (limiting field of operation to purely intrastate transactions);

*e.g., Vaccariello,* 763 N.E.2d at 164 ("Our holding today merely allows a plaintiff who could have filed suit in Ohio ... to rely on that [federal] class action to protect her rights in Ohio.... [It] does not invite plaintiffs who have no relationship to Ohio to file suit in our courts."). *See, e.g., PMI Mortgage Ins. Co. v. Deseret Fed. Savings and Loan,* 757 P.2d 1156 (Colo.App.1988); *Fidelity Finan. Svcs., Inc. v. West,* 640 N.E.2d 394 (Ind.Ct.App.1994); *Environmental Ventures, Inc. v. Alda Svcs. Corp.,* 19 Kan.App.2d 292, 868 P.2d 540 (1994); *Federal Land Bank of Columbia v. Davant,* 292 S.C. 172, 355 S.E.2d 293 (1987); *Smith v. Priority Transp., Inc.,* 02A01–9203–CV–00074, 1993 WL 29021 (Tenn.Ct.App. Feb.9, 1993).

In the antitrust context, declining to adopt cross-jurisdictional class action tolling will invite the filing of numerous protective, duplicative and in many cases, unnecessary, suits by class members. *American Pipe,* 414 U.S. at 553–54, 94 S.Ct. 756. These suits will consume judicial resources at the federal and state level. The Court agrees with the *Staub* court that the "efficient utilization of judicial resources and the reduction of costs to individual litigants are among the principal purposes of both state and federal class action rules." *Staub,* 726 A.2d at 966 (citing *American Pipe,* 414 U.S. at 553, 94 S.Ct. 756). As the *Staub* court further explained:

> A tolling rule which permits individual claimants to refrain from filing suit pending a decision on certification is almost indispensable to accomplish those purposes. In fact, a contrary rule would reward defendants who caused a court to delay decision of class action certification until the statute of limitations had run against any potential plaintiffs ...

*Heath Consultants, Inc. v. Precision Instruments, Inc.,* 247 Neb. 267, 527 N.W.2d 596, 606–07 (1995); *C. Bennett Bldg. Supplies Inc. v. Jenn Air Corp.,* 759 S.W.2d 883, 889 (Mo.Ct.App.1988); *International Television Prods. Ltd. v. Twentieth Century–Fox Television Div.,* 622 F.Supp. 1532, 1540 (S.D.N.Y.1985); *Lynch Display Corp. v. National Souvenir Ctr. Inc.,* 640 S.W.2d 837, 840 (Tenn.Ct.App.1982) (examining whether intrastate effects of alleged conduct predominate over interstate effects to determine applicability of state antitrust statute); *R.E. Spriggs Co. v. Adolph*

*Id.* And in a footnote to this passage, the court addressed the precise issue before this Court:

> We see no reason for tolling to depend on whether the class action is pending in state or federal court. Tolling state statutes of limitations during the pendency of a putative class action in federal court would tend to promote the efficiency of both state and federal courts systems because suits asserting the individual claims of the class members might be filed in either court system or in both. Further, we have an interest in promoting the efficiency of both systems.

*Id.* at n. 4.

In sum, the Court concludes that a rule recognizing cross-jurisdictional class action tolling in antitrust class actions filed in federal court generates greater efficiencies than a rule declining to do so. The Court will consider this factor when analyzing whether the various states in question, all of which have an interest in conserving judicial resources and reducing the cost of litigation, would adopt cross-jurisdictional class action tolling. The Court will also examine three additional factors to determine if a state's highest court would adopt cross-jurisdictional class action tolling whether: (1) whether that state has adopted class action tolling as to class actions filed in its own courts (hereafter referred to as "intra-jurisdictional class action tolling"); (2) whether that state's class action rule was modeled on Federal Rule of Civil Procedure 23; and (3) whether the state antitrust statute is similar to the Sherman and Clayton Acts.

#### (i) Colorado

Colorado has adopted intra-jurisdictional class action tolling. The Colorado Court of Appeals in *Rosenthal v. Dean Witter,* held:

*Coors Co.,* 37 Cal.App.3d 653, 112 Cal.Rptr. 585, 593 (Cal.Ct.App.1974) (relying on "factual nexus" within state to determine applicability of state antitrust statute); *Commonwealth v. McHugh,* 326 Mass. 249, 93 N.E.2d 751 (Mass. 1950); *Emergency One, Inc. v. Waterous Co., Inc.,* 23 F.Supp.2d 959, 969 (E.D.Wis.1998) (applying an "effects based standard" which "extends the jurisdictional scope of [state] antitrust law to unlawful activity which has significantly and adversely affected trade and economic competition within this state").

Because Colorado Rule of Civil Procedure 23 is virtually identical to Fed.R.Civ.P. 23, we rely on cases applying the federal rule. *Goebel v. Dept. of Institutions*, 764 P.2d 785 (Colo.1988). The commencement of a class action tolls the statute of limitations for all the members of the putative class, the portion of the limitations period that remained at the time the class action was commenced. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538[, 94 S.Ct. 756, 38 L.Ed.2d 713] (1974). The statute of limitations remains tolled for all members of the putative class until class certification is denied. *Crown Cork & Seal Co. v. Parker*, 462 U.S. 345[, 103 S.Ct. 2392, 76 L.Ed.2d 628] (1983). At that point, class members may choose to file their own suits or intervene as plaintiffs in the pending action.

883 P.2d 522, 531 (Colo.App.1994) *rev'd on other grounds* 908 P.2d 1095, 1098 (Colo. 1995).[9] As the Colorado Supreme Court stated in *Rosenthal*, Colorado's class action rule is "virtually identical" to Federal Rule of Civil Procedure 23.

An intermediate Colorado appeals court has ruled that "federal judicial interpretations of the Sherman and Clayton Acts are entitled to careful scrutiny in determining whether a particular business arrangement is a per se antitrust violation under the Colorado Antitrust Act". *Stifflear v. Bristol–Myers Squibb Co.*, 931 P.2d 471, 474 (Colo.App. 1996). The only significant difference between plaintiffs' federal and state antitrust claims is that the Colorado Antitrust Act provides full consideration paid as a remedy. See Colo.Rev.Stat. Ann. § 6–4–121.

Thus, for all of the foregoing reasons, the Court concludes that the Supreme Court of Colorado would adopt cross-jurisdictional class action tolling for antitrust class actions filed in federal courts.

#### (ii) *Indiana*

The Indiana Court of Appeals has adopted intra-jurisdictional class action tolling. *Arnold v. Dirrim*, 398 N.E.2d 426, 439 (Ind. App.1979).

Indiana's class action rule, Trial Rule 23, is "based upon Fed.R.Civ.P. 23" and the Indiana Supreme Court has ruled that it is appropriate for Indiana courts to consider federal court interpretations of the federal rule when applying the Indiana rule." *Hefty v. All Other Members of the Certified Settlement Class*, 680 N.E.2d 843 (Ind.1997) (citing *In re Tina T.*, 579 N.E.2d 48, 55 (Ind.1991)).

A United States District Court has noted that the Indiana antitrust statute is modeled after the Sherman Antitrust Act. *Perry v. Hartz Mountain Corp.*, 537 F.Supp. 1387, 1390 (S.D.Ind.1982). The only significant difference between plaintiffs' federal and state law claims is that the Indiana statute provides full consideration paid as a remedy. See Ind.Code § 24–1–5

Thus, for all of the foregoing reasons, the Court concludes that the Supreme Court of Indiana would adopt cross-jurisdictional class action tolling for antitrust class actions filed in the federal courts.

#### (iii) *Kansas*

The Supreme Court of Kansas had adopted intra-jurisdictional class action tolling. *Waltrip v. Sidwell Corp.*, 234 Kan. 1059, 678 P.2d 128, 133 (1984) ("[w]e hold that the right of all putative members of a proposed class in an action filed pursuant to K.S.A. 60–223 to file a separate action is preserved pending the determination whether the initial case shall be maintained as a class action).[10]

---

9. Defendants argue that the Supreme Court of Colorado would not adopt cross-jurisdictional class action tolling because Colorado courts strictly construe statutes of limitations and do not allow for tolling absent a specific statutory provision to that effect. Def.'s Mot. to Dismiss 18. However, as the citation to *Rosenthal* makes clear, Colorado has adopted intra-jurisdictional class action tolling.

10. Defendants argue that the Supreme Court of Kansas would not adopt cross-jurisdictional class action tolling because Kansas courts strictly construe statutes of limitations. Def.'s Mot. to Dismiss 19. Defendants further argue that issues related to Kansas state statutes of limitations must be resolved solely with reference to Kansas law. *Id.* However, as the citation to *Waltrip* makes clear, Kansas has adopted intra-jurisdictional class action tolling.

As the Kansas Supreme Court noted most recently in *Dragon v. Vanguard Industries, Inc.*, 277 Kan. 776, 89 P.3d 908 (2004), Kansas' class action rule is "patterned after Fed. R. Civ. Proc. 23, although it is not identical, and this court has traditionally followed the federal courts' interpretation of the federal rule." *Id.* at 910 (citing *Steele v. Security Benefit Life Ins. Co.*, 226 Kan. 631, 602 P.2d 1305 (1979)).

The provisions of the Kansas antitrust act are very similar to the provisions of the Sherman Act. Compare Kan. Stat. Ann. § 50–112 ("All arrangements, contracts, agreements, trusts or combinations between persons made with a view or which tend to prevent full and free competition ... are hereby declared to be against public policy, unlawful and void.") with 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce ... is declared to be illegal."). The only significant difference between plaintiffs' federal and Kansas state law claims is that the applicable state law provides full consideration paid as a remedy. See Kan. Stat. Ann. § 50–115.

Thus, for all of the foregoing reasons, the Court concludes that the Supreme Court of Kansas would adopt cross-jurisdictional class action tolling for antitrust class actions filed in the federal courts.

### (iv) *South Carolina*

South Carolina's class action rule is "drawn principally from Federal Rule 23." *See also, McGann v. Mungo*, 287 S.C. 561, 340 S.E.2d 154 (1986) (Court of Appeals cites federal cases and commentary in construing new Rule 23, SCRCP). As an intermediate South Carolina appellate court recently explained, "[c]itations to federal case law and the federal rules are based on the principal that interpretations of the federal rule provide guidance in interpreting the South Carolina rule absent material differences in their wording." *Middleton v. SunStar Acceptance Corp.*, 2000 WL 33385388, *3 n. 3 (S.C.Com. Pl.,2000).

The South Carolina antitrust act is similar to the Sherman Act. Compare S.C.Code Ann. § 39–3–10 ("All arrangements, contracts, agreements, trusts or combinations ... made with a view to lessen, or which tend to lessen, full and free competition ... are declared to be against public policy, unlawful and void.") with 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce ... is declared to be illegal."). The only significant difference between plaintiffs' federal and state law claims is that the South Carolina antitrust act provides full consideration paid as a remedy. S.C.Code Ann. § 39–3–30.

Defendants cite *Witt v. American Trucking Ass'ns*, 860 F.Supp. 295, 299, 301 n. 4 (D.S.C.1994) for the rule that "South Carolina does not provide the tolling of the limitations period while a claim is pending in federal court." However, the statement of the *Witt* court cited by defendants was made in a footnote without elaborating the court's reasoning and it relies without explanation on two earlier decisions, only one of which was from a South Carolina state court and neither of which held that the filing of a claim in federal court does not toll the statute of limitations in a later filed state court claim. Further, and most importantly, *Witt* was not a class action. Thus, *Witt* is distinguishable from this case.

Thus, for all of the foregoing reasons, the Court concludes that the Supreme Court of South Carolina would adopt cross-jurisdictional class action tolling for antitrust class actions filed in the federal courts.

### (v) *Tennessee*

The Tennessee Supreme Court describes Tennessee's class action rule as "identical" to Federal Rule of Civil Procedure 23 and has ruled that "federal authority is persuasive" in Tennessee state courts interpreting Tennessee's class action rule. *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 637, n. 2 (Tenn.1996); *Bayberry Associates v. Jones*, 783 S.W.2d 553 (Tenn.1990).

The Tennessee antitrust statute uses language very similar to the Sherman Act. Compare Tenn.Code Ann. § 47–25–101 ("All arrangements, contracts, agreements, trusts, or combinations ... made with a view to lessen,

or which tend to lessen, full and free competition ... are declared to be against public policy, unlawful, and void.") with 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce ... is declared to be illegal."). The only significant difference between plaintiffs' federal and state law claims is that the Tennessee antitrust act provides full consideration paid as a remedy. Tenn.Code Ann. § 47–25–106.

In *Maestas v. Sofamor Danek Group, Inc.*, 33 S.W.3d 805, 808 (Tenn.2000) the Supreme Court of Tennessee declined to adopt cross-jurisdictional tolling in a products liability case. Defendants argue this decision precludes the application of cross-jurisdictional class action tolling in the present case. This Court disagrees. The Tennessee Supreme Court declined to adopt cross-jurisdictional class action tolling, citing the Supreme Court of Illinois *Portwood* decision. For the reasons stated *supra*, the Court concludes the *Portwood* rationale would not be adopted by the Tennessee Supreme Court in antitrust cases. Further, the factors the Tennessee Supreme Court considered, judicial economy and costs of litigation, favor adopting cross-jurisdictional class action tolling for antitrust class actions filed in federal court.

Thus, for all of the foregoing reasons, the Court concludes that the Supreme Court of Tennessee would adopt cross-jurisdictional class action tolling for antitrust class actions filed in the federal courts.

    *c.  Tolling is Appropriate Because Plaintiffs State Law Claims are Substantially Similar to Those Asserted in the Federal Class Action*

For tolling to apply, claims do not have to be identical but only substantially similar to those brought in the original class action. *Crown, Cork,* 462 U.S. at 355, 103 S.Ct. 2392 ("when a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit' ") (citing *American Pipe,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)) (Powell, concurring). *See also Tosti v. City of Los Angeles,* 754 F.2d 1485, 1489 (9th Cir.1985) ("We find no persuasive authority for a rule which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled."); *In re: Independent Service Org. Antitrust Litig.,* Civil Action No. MDL–1021, 1997 WL 161940, *4 (D.Kan. Mar.12, 1997) (requiring the allegations of both suits to be identical "would be illogical because one of the primary reasons a member will opt out of a class suit is that she has strong individual claims against the defendant that she believes will not be redressed by the overall class settlement") (citations omitted).

Plaintiffs' state law claims meet the similarity requirements for tolling set forth in *American Pipe* and *Crown, Cork.* First, the factual predicates for plaintiffs' federal and state claims are the same. Second, as discussed *above,* the state antitrust statutes on which plaintiffs' claims are based are modeled upon or closely track the language of the federal antitrust statutes. *Stifflear v. Bristol–Myers Squibb Co.,* 931 P.2d 471, 474 (Colo.App.1996) ("federal judicial interpretations of the Sherman and Clayton Acts are entitled to careful scrutiny in determining whether a particular business arrangement is a per se antitrust violation under the Colorado Antitrust Act"); *Perry v. Hartz Mountain Corp.,* 537 F.Supp. 1387, 1390 (S.D.Ind. 1982) (Indiana antitrust statute modeled after Sherman Antitrust Act); Kan. Stat. Ann. § 50–112 ("All arrangements, contracts, agreements, trusts or combinations between persons made with a view or which tend to prevent full and free competition ... are hereby declared to be against public policy, unlawful and void."); S.C.Code Ann. § 39–3–10 ("All arrangements, contracts, agreements, trusts or combinations ... made with a view to lessen, or which tend to lessen, full and free competition ... are declared to be against public policy, unlawful and void."); Tenn.Code Ann. § 47–25–101 ("All arrangements, contracts, agreements, trusts, or combinations ... made with a view to lessen, or which tend to lessen, full and free competition ... are declared to be against public policy, unlawful, and void.") with 15 U.S.C.

§ 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce ... is declared to be illegal.").

The only significant difference between plaintiffs' federal and state antitrust claims is that the applicable state laws provide full consideration paid as a remedy. See Colo. Rev.Stat. Ann. § 6–4–121; Ind.Code § 24–1–5; Kan. Stat. Ann. § 50–115; S.C.Code Ann. § 39–3–30; Tenn.Code Ann. § 47–25–106; Wis. Stat. § 133.14. However, as this Court noted several years ago, an individual plaintiff that seeks a different remedy from that sought in the class action should not be barred from asserting claims by the statute of limitations. *Swierkowski v. Consolidated Rail Corp.*, 168 F.Supp.2d 389, 395 (E.D.Pa. 2001) ("Creating a rule which would require individual plaintiffs to litigate their damages claims while a class action seeking injunctive relief for an alleged pattern or practice of discrimination was pending would run completely counter to the efficiency rationale of the class action by having two suits covering essentially the same claim running at the same time.") (quoting *Crown, Cork,* 462 U.S. at 350, 103 S.Ct. 2392).

#### d. Prejudice

Because defendants were put on notice of the factual predicate for all of the potential antitrust claims—whether federal or state—of class members, regardless of whether they stayed in the class or opted out and filed individual actions, no "potential for unfair surprise" would be created by tolling the statutes of limitations for plaintiffs' state law claims. *Crown, Cork,* 462 U.S. at 353, 103 S.Ct. 2392 (once class action is filed, "[t]he defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class"). *See also Vaccariello,* 763 N.E.2d at 163 (when a class action is filed, "the defendant is put on notice of the substance and nature of the claims against it" as to any subsequent individual claims that might be asserted arising out of the same set of facts); *Staub,* 726 A.2d at 967 ("although defendants did not know of the specific claim of these plaintiffs until they commenced this suit, defendants knew within

the period of limitations that if they were successful in defeating class certification, they would probably face individual suits").

In sum, the Court concludes that the statutes of limitations were tolled in Colorado, Indiana, Kansas, South Carolina and Tennessee from the date of filing the class action until the direct action plaintiffs opted out of the classes. Thus, direct action plaintiffs claims under the laws of these states are not time barred and will not be dismissed.

#### B. MOTION TO DISMISS MARYLAND CLAIMS UNDER RULE 12(c) AS TIME BARRED

▆▆▆ Defendants have also moved to dismiss Perdue's claims arising under the MATA on the grounds that they are time barred. The MATA (Md.Code Ann., Com. Law § 11–201 et seq.) contains a four year statute of limitations. See Md.Code Ann., Com. Law § 11–209(c) ("An action brought to enforce this subtitle shall be commenced within four years after the cause of action accrues."). Under Maryland law, the statute of limitations begins to run once plaintiff "knows, or through the exercise of reasonable diligence should know, of the wrong." *Murphy v. Merzbacher,* 346 Md. 525, 697 A.2d 861, 865 (1997). Thus, defendants argue that direct action plaintiffs had until February 25, 2002 to file their Maryland claims. Perdue did not file its direct action until June 9, 2003.

The *Perdue* plaintiffs argue that the Maryland statute of limitations was tolled during the pendency of class certification in this court. Defendants argue that Maryland has not affirmatively adopted cross-jurisdictional tolling and point to *Thelen v. Massachusetts Mutual Life Insurance Co.,* 111 F.Supp.2d 688 (D.Md.2000) in support of their argument that Maryland would not adopt cross-jurisdictional class action tolling. In *Thelen,* a United States District Court sitting in diversity concluded:

> In Maryland, also, there is no case directly addressing the issue, but what precedents there are, augur against its adoption. *See, e.g., Hecht v. Resolution Trust Corp.,* [333 Md. 324,] 635 A.2d 394, 399 (1994). Indeed, the existence of Rule 2–101(b), which

provides a limited savings window if an identical action is dismissed by another court, clearly indicates the absence, under Maryland law, of the broad, cross-jurisdictional class action equitable tolling advocated by plaintiffs.

*Id.* at 694.

The facts in *Thelen* differ so substantially from the facts in the present matter as to make the district court's ruling distinguishable. *Thelen* involved an attempt by Maryland residents asserting Maryland common law and Massachusetts statutory consumer protection claims against a Massachusetts defendant to toll the statute of limitations on those claims based upon the pendency of separate and different class actions against the same defendant in state courts in New York and Mississippi. The common law and state consumer protection claims asserted by the class plaintiffs in New York and Mississippi class actions were different from each other and from those asserted by the *Thelen* plaintiffs and each different claim required proof of different elements. *Russo v. Massachusetts Mutual Life Ins. Co.,* 192 Misc.2d 349, 746 N.Y.S.2d 380, 381–82 (N.Y.Sup.Ct. 2002) (detailing the requirements of the New York statute under which the New York class action was brought); *Russo v. Massachusetts Mutual Life Ins. Co.,* 178 Misc.2d 772, 680 N.Y.S.2d 916, 919 (N.Y.Sup.Ct.1998) (declining to apply substantively different Massachusetts law to plaintiffs claims); *Cunningham v. Massachusetts Mutual Life Ins. Co.,* 1996 WL 901285 at *1 (N.D.Miss.1996) (all of plaintiffs claims were under Mississippi law). Thus, the *Thelen* plaintiffs could not claim to have preserved their claims against the defendant by virtue of the filing of the class actions in New York and Mississippi and, unlike this case, *Thelen* presented substantial forum-shopping problems.

While the *Thelen* court concluded that "what precedents there are, augur against its adoption" in that case, this Court concludes, based on relevant Maryland precedents, that the Maryland Court of Appeals would adopt cross-jurisdictional class action tolling in the antitrust context. First, the Maryland General Assembly has instructed courts interpreting the MATA to "be guided by the interpretation given by the federal courts to the various federal [antitrust] statutes." Md. Code Ann. Com. Law II § 11–202(b). Second, the Maryland class action rule, Rule 2–231, is "similar to Rule 23 of the Federal Rules of Civil Procedure" and the Maryland Court of Appeals has ruled that "[o]ur analysis shall be informed by cases interpreting Rule 23 and other analogous state rules outlining class certification requirements." *Creveling v. Government Employees Ins. Co.,* 376 Md. 72, 828 A.2d 229, 239 n. 4 (2003); *see also Philip Morris v. Angeletti,* 358 Md. 689, 752 A.2d 200, 219–20 (2000) (noting that "there exists an abundance of cases from other jurisdictions, federal and state, that have analyzed class action rules either identical to or similar to Maryland's rule" and utilizing those cases as analytical aids).

Thus, for all the foregoing reasons, the Court concludes that the Maryland Court of Appeals would adopt cross-jurisdictional class action tolling in antitrust class actions filed in federal court.

## C. MOTION TO DISMISS SOUTH CAROLINA AND WISCONSIN CLAIMS UNDER RULE 12(b)(6) BECAUSE CLAIMS INVOLVE INTERSTATE COMMERCE

Defendants argue that plaintiffs' South Carolina and Wisconsin claims are not cognizable under the antitrust laws of those states because they do not relate solely to intrastate conduct. The Court addresses these arguments in turn.

### 1. *South Carolina*

South Carolina's antitrust statute proscribes, *inter alia,* "arrangements, contracts, agreements, trusts or combinations . . . made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this State. . . ." S.C.Code Ann. § 39–3–10. Further, the statute forbids agreements that control, advance or reduce the price or cost to the consumer of goods that are either imported or that are transacted entirely within the state. *Id.*

Defendants assert that South Carolina courts have limited application of its state antitrust statute to "conduct that is solely intrastate in nature." Def. Mot. to Dismiss 20. Defendants cite *State v. Virginia–Carolina Chem. Co.*, 71 S.C. 544, 51 S.E. 455 (1905) and decisions applying that case in support of their position. *Three J. Farms, Inc. v. Alton Box Board Co.*, 1978 WL 1459, at *6 (D.S.C. Nov.29, 1978), *rev'd on other grounds*, 609 F.2d 112 (4th Cir.1979) ("even though South Carolina has an antitrust law ... its application was limited many years ago to exclude activities having an effect upon interstate commerce"); *In re Wiring Device Antitrust Litig.*, 498 F.Supp. 79, 84–85 (E.D.N.Y.1980) (dismissing South Carolina antitrust claim under Rule 12(b)(6) because defendants' business activities were "wholly interstate in character").

In *Virginia–Carolina Chem. Co.*, 51 S.E. 455 (1905), the South Carolina Attorney General brought suit against a number of fertilizer manufacturers. Most were located in South Carolina, but at least one, the Virginia–Carolina Chemical Co., was incorporated in New Jersey and had very few operations in South Carolina. The plaintiff alleged that the defendants entered into an unlawful scheme, controlled by Virginia–Carolina, to control the prices and lessen competition in the manufacture and sale of fertilizer in South Carolina. The South Carolina Supreme Court held that the clause of the South Carolina antitrust statute that regulates the importation of goods or sale of imported goods into South Carolina conflicted with the federal interstate commerce clause. *Virginia–Carolina*, 51 S.E. at 461. However, the South Carolina Supreme Court upheld the Circuit Court's decision to deny the defendants' motion to dismiss the complaint, finding that the plaintiff had sufficiently alleged unlawful conduct pursuant to South Carolina's antitrust statute.

*Three J Farms, Inc. v. Alton Box Board Co.*, Civil Action No. 78–1257, 1978 WL 1459 (D.S.C. November 29, 1978) and *In re Wiring Device Antitrust Litigation*, 498 F.Supp. 79 (E.D.N.Y.1980), cite that part of the *Virginia–Carolina* decision which held that the clause of the South Carolina antitrust statute that regulates the importation of goods or sale of imported goods into South Carolina conflicted with the federal interstate commerce clause. *Virginia–Carolina*, 51 S.E. at 461. These cases do not stand for the proposition, as defendants assert, that South Carolina's antitrust law does not apply "where the defendant is alleged to have engaged in a scheme that took place and affected consumers across the country." Def. Mem. at 20. Rather, the courts in these cases made significantly more limited holdings that, on the specific facts before them, South Carolina law did not apply to claims based upon products manufactured outside of the state of South Carolina and imported into South Carolina for sale.[11]

In the instant case, plaintiffs allege ties to South Carolina that are comparable to, if not stronger than, those found to be sufficient in *Virginia–Carolina*. During the relevant time period, at least 16 plaintiffs resided in South Carolina, maintained facilities in South Carolina for which corrugated material was purchased from one or more of the defendants, or purchased corrugated material from one or more of the defendants for use in South Carolina. P & G Amended Complaint at ¶ 161; Mars Amended Complaint at

---

11. In *Three J Farms*, the Court ruled:

> Therefore any claim for damages resulting from the importation or the sale of imported corrugated containers is not a South Carolina claim, but purely a federal claim. This would include the plaintiff Shapiro since he was not located in South Carolina and in his affidavit affirms: 'It is conceded, of course, that corrugated boxes involved in this complaint have been shipped by the defendants into South Carolina.'

1978 WL 1459 at *6. Similarly in *In re Wiring Device*, the district court concluded:

> The sole connection between the defendants and South Carolina is that an insignificant portion approximately one percent of the wiring devices which they have manufactured outside the state has been imported into the state. Thus, each defendant's activities in South Carolina involve nothing more than "soliciting, cultivating and supervising its interstate business." This circumstance is not sufficient to invoke the application of section 39–3–10. The well-established South Carolina rule that wholly interstate activity is outside the scope of that section must be applied.

498 F.Supp. at 83.

¶ 92. Plaintiffs allege that at least seven of the defendants maintained corrugated container manufacturing facilities in South Carolina during the relevant period. P & G Amended Complaint at ¶ 162; Mars Amended Complaint at ¶ 93. Thus, unlike the claims in *Three J Farms*, plaintiffs are not bringing claims based solely on the importation or sale of imported articles in South Carolina; defendants' conduct is not "wholly interstate" as was the case in *In re Wiring Device Antitrust Litigation*. Rather plaintiffs have pled in their Amended Complaints that defendants have produced linerboard in South Carolina and sold it to South Carolina entities. Accordingly, plaintiffs' South Carolina claims will not be dismissed on the ground that defendants' alleged conduct is not actionable under South Carolina antitrust law.

### 2. *Wisconsin*

The Wisconsin antitrust statute prohibits "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade and commerce." Wis. Stat. Ann. § 133.03. Further, "all contracts or agreements made by any person while a member of any combination or conspiracy prohibited by § 133.03" are void. Wis. Stat. Ann. § 133.14.

Defendants argue that Wisconsin has limited the application of its state antitrust statute to "conduct that is solely intrastate in nature." Def. Mot. to Dismiss 20. Defendants cite *Pulp Wood Co. v. Green Bay Paper & Fiber Co.*, 157 Wis. 604, 147 N.W. 1058 (1914) and subsequent decisions applying Pulp Wood in support of their position. *Id.*

*Pulp Wood* involved antitrust allegations surrounding a series of contracts to supply wood pulp to Wisconsin paper manufacturers. The contracts required the paper mills to purchase wood pulp from a single Wisconsin supplier. However, because the wood originally furnished to this supplier came from Wisconsin, Minnesota, Michigan and Canada, the Wisconsin Supreme Court held that defendants conduct was interstate in character and chose to apply the Sherman Act. *Pulp Wood* does not unequivocally bar the simultaneous application of state and federal antitrust law.

"Subsequent cases have tended to cite *Pulp Wood* summarily for the proposition that Wisconsin antitrust law, though taken from the federal statutes, applies 'to intrastate as distinguished from interstate transactions.'" *Emergency One, Inc. v. Waterous Co., Inc.*, 23 F.Supp.2d 959, 971 (E.D.Wis. 1998). As the *Emergency One* court explains, however, Wisconsin courts have not, as defendants assert, refused to apply Wisconsin's antitrust statutes to intrastate activities that also involve interstate conduct or have interstate effects. *Id.* at 965–66 ("the Wisconsin Supreme Court has for some time interpreted the state antitrust statutes to reach interstate activities in certain circumstances and has rejected a mutually exclusive vision of state/federal antitrust enforcement").[12]

In *State v. Allied Chem. & Dye Corp.*, 9 Wis.2d 290, 101 N.W.2d 133 (1960), the Wisconsin attorney general brought price-fixing charges against several domestic and foreign corporations engaged in the manufacture and sale of the chemical product calcium chloride in Wisconsin. The complaint alleged that

12. In place of "rote reliance" on the intrastate/interstate distinction, the *Emergency One* court adopted an "adverse effects standard" to determine whether Wisconsin state antitrust statutes are appropriately applied to economic activity that is both intrastate and interstate in character. The court reasoned:

An adverse effects standard would extend the jurisdictional scope of Wisconsin antitrust law to unlawful activity which has significantly and adversely affected trade and economic competition within this state. This standard is consistent with both Wisconsin precedent and judicial interpretations of the scope of federal

antitrust law. Most importantly, it comports with the legislative intent of Chapter 133 ... In a recent decision addressing the correct burden of proof to be applied to private, civil antitrust actions under the chapter, the Wisconsin Supreme Court noted its assumption that "the legislature intended an interpretation that advances, not hinders, the purposes of the statute." Ultimately, an adverse effects standard is the only standard that remains faithful to the purpose of Chapter 133—to protect and encourage competition in this state, by penalizing interstate activities that adversely affect it.
*Id.* at 969–970 (citations omitted).

356

some but not all of the acts constituting a nationwide conspiracy in restraint of trade occurred in Wisconsin. *Id.* at 291, 101 N.W.2d 133. Similar actions by the same defendants had been the subject of FTC proceedings over an extended period. *Id.* at 293–94, 101 N.W.2d 133. Defendants asserted *inter alia* that all sales of calcium chloride in Wisconsin were made in interstate commerce; that none of the defendants owned or operated a manufacturing plant, sales office or warehouse in Wisconsin; that the chemical was produced entirely out of state; and that each defendant routinely sold calcium chloride on a nationwide basis. *Id.* at 292–93, 101 N.W.2d 133. Based on these assertions, the defendants moved for summary judgment, arguing that Chapter 133 did not reach the conduct at issue. The Wisconsin Supreme Court rejected the defendants' argument and denied summary judgment. After examining both the state and federal legislative enactments in the antitrust field, that court concluded that there was no conflict between the two as the state statutes did not burden interstate commerce. *Id.* at 295, 101 N.W.2d 133.

Direct action plaintiffs have alleged more extensive intrastate conduct and contacts with Wisconsin than the defendants' Wisconsin conduct and contacts in *Allied Chemical.* In the Amended Complaints plaintiffs allege that during the relevant time period, at least 23 plaintiffs resided in Wisconsin, maintained facilities in Wisconsin for which corrugated material was purchased from one or more of the defendants, or purchased for use in Wisconsin corrugated material from one or more of the defendants. *See, e.g.,* P & G Amended Complaint at ¶ 125. Further, plaintiffs allege that at least six of the defendants maintained corrugated container manufacturing facilities in Wisconsin during the relevant time period. *Id.* at ¶ 126. Plaintiffs also allege that contracts or agreements, pursuant to which plaintiffs purchased corrugated materials, were the result of, grew out of, or were otherwise connected with, the violation of the Wisconsin antitrust statute. *Id.* at ¶ 127. Construing the allegations in the direct action plaintiffs' Amended Complaints liberally, the Court concludes that plaintiffs have sufficiently alleged wrongful conduct

and damages pursuant to the requirements of the Wisconsin antitrust statute.

In conclusion, with respect to the Wisconsin claims, direct action plaintiffs have brought to the Court's attention that the Wisconsin Court of Appeals recently certified a case for immediate appeal to the Wisconsin Supreme Court on the precise issue faced by this Court. *Olstad v. Microsoft,* No. 03–1086, 2004 WL 291267 (Wis.App. Feb.17, 2004) ("[T]he parties' arguments to this court strongly suggest that the determination of whether Wisconsin's antitrust statute applies to interstate commerce affecting intrastate commerce is an issue requiring careful analysis of public policy as well as law … this case is appropriate for certification to the Wisconsin Supreme Court."). *Olstad* is now pending argument in the Wisconsin Supreme Court. The Court will therefore grant defendants leave to file a second motion to dismiss direct action plaintiffs Wisconsin claims if *Olstad* is decided in a way that conflicts with this Court's ruling.

## V. CONCLUSION

As to defendants motion to dismiss under Rules 12(b)(6) and 12(c) raising timeliness issues, the Court concludes that the statutes of limitations in Colorado, Indiana, Kansas, South Carolina and Tennessee were tolled until the Mars, Milne Fruit and Proctor & Gamble opted out of the classes. Thus, direct action plaintiffs state law claims asserted in the Amended Complaints are not time barred. Similarly, the Perdue plaintiffs claims were tolled until Perdue opted out of the classes and the Perdue plaintiffs Maryland claims included in their Complaint are not time barred.

As to defendants motion to dismiss under Rule 12(b)(6) on the ground that direct action plaintiffs allegations are not cognizable under the South Carolina and Wisconsin antitrust laws, the Court concludes that neither South Carolina nor Wisconsin has limited the applicability of their antitrust statutes to preclude direct action plaintiffs claims as a matter of law.

Defendants Motion to Dismiss Plaintiffs' State Law Claims is denied for all of the foregoing reasons.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 27th day of August, 2004, upon consideration of Defendants' Motion to Dismiss Plaintiffs' State Law Claims (Docket No. 369, filed April 28, 2004), Opposition to Defendants' Motion to Dismiss Plaintiffs' State Law Claims (Docket No. 369, filed May 19, 2004), Memorandum of Plaintiff Perdue Farms Incorporated in Opposition to Defendants' Motion for Judgment on the Pleadings (Docket No. 383, filed May 24, 2004), Reply in Support of Defendants' Motion for Judgment on the Pleadings (Docket No. 386, filed June 2, 2004), Reply in Support of Defendants' Motion to Dismiss State Law Claims (Docket No. 387, filed June 2, 2004) and Surreply of Plaintiff Perdue Farms Incorporated in Opposition to Defendants' Motion for Judgment on the Pleadings (Docket No. 390, filed June 4, 2004), **IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiffs' State Law Claims is **DENIED.**

**IT IS FURTHER ORDERED** that the plaintiffs in *Perdue Farms Incorporated v. Stone Container Corporation, et al.,* No. 03–1702 (D.Md. filed June 9, 2003), *United States Gypsum Company, et al. v. Stone Container Corporation, et al.,* No. 03–4251 (N.D. Ill. filed June 10, 2003), *Hormel Foods Corporation, et al. v. Stone Container Corporation, et al.,* No. 03–3421 (D. Minn. filed June 13, 2003), *Kellogg Company, et al. v. Smurfit Stone Container Corporation, et al.,* No. 03–4213 (N.D. Ill. filed June 19, 2003), and *Conopco, Inc., et al. v. Smurfit Stone Container Corporation, a successor to Stone Container Corporation, et al.,* No. 03–3549 (E.D. Pa. filed June 9, 2003) are **GRANTED LEAVE** to file and serve amended complaints within twenty (20) days which add the same federal and state claims that were included in the Amended Complaints filed by plaintiffs in *Procter & Gamble Company, et al. v. Stone Container Corporation, et al.,* No. 03–3944 (N.D. Ill. filed June 10, 2003), *Milne Fruit Products, Inc., et al. v. Stone Container Corporation, et al.,* No. 03–4049 (N.D. Ill. filed June 13, 2003), and *Mars, Inc., et al. v. Stone Container Corporation, et al.,* No. 03–6977 (N.D. Ill. filed October 1, 2003). One copy of the amended complaints shall be served on the Court (Chambers, Room 12613) when the originals are filed.